JOSEPH E. BARTLETT vs. MYSTIC RIVER CORPORATION.

Suffolk.   January 24, 1890. — May 9, 1890.

Present: FIELD, DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

Corporation — Implied Contract to pay President for Personal Services —
Vote — Statute of Frauds.

A contract may be implied on the part of a corporation to pay its president for special services, none of which devolved on him as a part of his official duty, rendered to the corporation with the knowledge and approbation of the directors, who had every reason to think that he would claim compensation therefor, although the directors had previously voted that "no member of the corporation should thereafter receive any compensation for services rendered, unless first authorized by the board, and his compensation fixed," if the president was not a member of the board at the time the vote was passed, and had no knowledge of the vote; and a previous settlement made with him by the corporation for similar services is not conclusive as to the rate to be allowed him for his later services.

An agreement to pay for personal services in selling land, payment for which is to be made when the property is sold and paid for, may be performed within a year, and is not within the statute of frauds.

BILL IN EQUITY, inserted in a writ dated August 2, 1887, brought by Joseph E. Bartlett against the Mystic River Corporation, which was incorporated for the purpose of filling and otherwise improving certain flats in the Mystic River, to recover, among other things, for personal services alleged to have been rendered by Bartlett to the corporation while its president, at various times from 1850 to 1887. The case was referred to a special master, who, among other findings for the plaintiff, found for him in the sum of $17,000, "for special services rendered the defendant from July 16, 1870, to August, 1887"; and reported all the evidence. Both parties filed exceptions to the master's report, but those alleged by the plaintiff were subsequently waived. The case was heard, upon the master's report and upon the defendant's exceptions thereto, before Devens, J., who overruled the exceptions, and directed a decree to be entered for the plaintiff in accordance with the findings of the master, for the above amount, among other sums found due by the master for special services, with interest from the date of the writ; and at the defendant's request reported the case for the consideration

of the full court.   If the findings and decree were correct and warranted by the evidence, the decree was to be affirmed ; otherwise, the decree was to be modified or entered for the defendant, or the case stand for further hearing or to be recommitted to the master, as justice might require.   The facts, so far as now material to the points decided, appear in the opinion.

*R. M. Morse, Jr. & W. P. Blake,* for the defendant.

*A. E. Pillsbury,* for the plaintiff.

C. ALLEN, J.   It is contended by the defendant, in the first place, that there was no contract either express or implied to pay for the plaintiff's services.   The master found that the defendant settled with the plaintiff in full for services rendered by him prior to July 16, 1870 ; and that the plaintiff did not rest his claim for services rendered since that date upon any special contract, but upon the ground that an obligation is implied and imposed on the corporation to pay him, inasmuch as its officers knew he was rendering the services, and in many cases requested him to render them, and had abundant reason to believe that he expected to be paid and intended to make a claim for them. The defendant admitted that the plaintiff had for seventeen years rendered services of great value to the corporation, but denied that there was any obligation on its part to pay him therefor. The master further found that the defendant was largely benefited by the special service which the plaintiff rendered to it from July 16, 1870, to August, 1887, when the last sale of its property was completed, and that all his time and energies were devoted to its interests, a part of his time, however, being occupied in the performance of contracts which he made with the corporation for dredging, for which he had been paid in part before the commencement of this suit.   A further allowance for the same, now undisputed, was made by the master.   The master further found, that none of these services devolved on the plaintiff as part of his official duty as president of the corporation ; that they were rendered with the knowledge and approbation of the directors of the corporation, and that the directors had every reason to think that he would claim compensation therefor ; that it was his intention to claim compensation when the property should be finally disposed of, and that the other directors had good reason to think that he so intended ; and

that the contract which was imposed upon the corporation was continuous and entire, and one which the plaintiff had no right to enforce until the property was sold and paid for, viz. until August, 1887.

The question whether there was an implied contract to the above effect is conceded to be one of fact rather than of law, and the argument on the part of the defendant has been chiefly directed to an endeavor to convince us that a contrary result ought to have been reached by the master. Among other pieces of evidence in the case was a vote passed by the defendant's directors on the 30th of July, 1870, " that no member of the corporation should thereafter receive any compensation for services rendered, unless first authorized by the board, and his compensation fixed." The plaintiff was not then a member of the board of directors, and the master found that he never knew or heard of this vote until October, 1887. But it is argued that, even if the plaintiff was not bound by the vote, yet the passing of such a vote shows that the defendant did not intend or understand that in the future compensation should be paid to the plaintiff. This vote, however, was not in the nature of a by-law, nor was it necessarily intended to be binding for all time ; no notice of it was given to the plaintiff. The effect of it might be done away with afterwards, either by an express understanding to the contrary, or by a merely tacit waiver ; and, in short, it was only a piece of evidence to be considered with the other evidence in the case as bearing upon the question of what the defendant's directors really understood. There appears to have been no error on the part of the master in applying the rules of law applicable to the determination of the question whether there was an implied contract, as laid down in *Sawyer* v. *Pawners' Bank*, 6 Allen, 207, and *Pew* v. *First National Bank of Gloucester*, 130 Mass. 391, 395 ; that is to say, that the defendant accepted the services under such circumstances as to raise a presumption that it expected, or ought to have expected, that they were to be paid for. And in considering whether such an implied contract was proved or not, the nature of the corporation and of its business, the extent and character of the plaintiff's services, the comparative amount and value of the services of other officers of the defendant, as well

as all the other circumstances of the case, must necessarily be looked at and weighed. The fact that previous services by him had been paid for, and that services by other officers of the defendant, by Herrick and the two Stones, had also been compensated, either by gratuities or otherwise, was also of some significance. In view of all the testimony in the case, we see no occasion to set aside the findings of the master.

It is further contended by the defendant, that if there was an implied contract for compensation, it was limited to the rate allowed to the plaintiff in the settlement for his services to July 16, 1870. This also is a question of fact rather than of law. No doubt that settlement was competent evidence as bearing upon the question, but not conclusive. _Tatterson_ v. _Suffolk Manuf. Co._ 106 Mass. 56. The two great sales of property by which the defendant realized its profits were made afterwards, and the value of services rendered under an implied contract for compensation may depend, not merely upon the labor involved, but upon the success. In this instance, also, we must accept the finding of the master.

The defendant further relies upon the statute of frauds. But assuming the contract to be as found by the master, it might be performed within one year, and so was not within the statute. The payment was to be made when the property should be sold and paid for. This might happen at any time. The case falls within the general rule, as illustrated by _Doyle_ v. _Dixon_, 97 Mass. 208, and cases there cited. It is not like _Frary_ v. _Sterling_, 99 Mass. 461, where it was held that the promise to pay, according to the only reasonable construction of its terms, could not be performed within one year, and so was within the statute.

The defence of the statute of limitations is also met by the finding of the master, that the plaintiff had no right to enforce payment until the property was sold and paid for.

_Decree as reported by single justice to be entered._