## Lowe, Respondent, vs. Ring, Appellant.

*October 24—November 11, 1902.*

| 115 | 575 |
|-----|------|
| 116 | '140 |

*Corporations: Contracts, express and implied: Authority of officers: Special verdict: Instructions to jury: Evidence.*

1. An officer of a corporation, having the general management of its business, may enter into any contract necessary or usual in the course of such business, or reasonably incident thereto, without authority first being given therefor by a formal vote of the directors. Such authority may be inferred from the conduct of the directors, or from their knowledge of the facts and failure to object.

2. The question being whether defendant was entitled to be paid for certain services rendered to a bank by him as its president and as its attorney, the submission to the jury of questions as to whether the services were "performed under a contract with the bank," is *held* to have been misleading since it left the jury to infer that defendant could not recover unless the bank expressly agreed to pay.

3. An instruction, in such case, to the effect that to constitute an express contract with the corporation, if no formal motion or resolution was adopted, there must at least have been a proposition made to the board of directors at a meeting regularly called, and assented to by all present, and subsequent action by the other party upon the promise of the directors so made, is *held* erroneous.

4. The question being whether defendant had succeeded to the rights of a firm as to certain charges against a bank for services, claimed by him as a setoff, he testified that all the accounts of the firm had been transferred to him, with a few exceptions, and that none of the items in question were excepted. The court struck out the latter statement and submitted to the jury the question whether defendant succeeded to *all the rights* of the firm to collect for services rendered to the bank. *Held,* error.

5. One claiming compensation from a bank for services alleged to have been rendered, under an arrangement with it, as administrator of an estate in which it was largely interested, may testify as to what he was directed to do by the directors of the bank, and what they said on that subject.

Appeal from a judgment of the circuit court for Clark county: E. W. Helms, Judge. *Reversed.*

This action was commenced December 31, 1897, to recover the amount due upon two promissory notes,—one for $1,500, executed by the defendant November 3, 1891, and the other for $485.88, executed by the defendant and another, severally, June 2, 1892, and which notes had been transferred to the plaintiff by the Clark County Bank before the commencement of this action. The defendant answered by way of admissions, denials, and counter allegations, and, among other things, alleged, by way of setoff and counterclaim, claims for services of himself and his firm of Ring & Youmans, as attorneys at law, at the special instance and request of the Clark County Bank while it owned the notes, in various matters, and also for the defendant's services as president of that bank. The plaintiff replied to the counterclaim by way of admissions, denials, and counter allegations to the effect that the services rendered were gratuitous, as president of the bank.

It is claimed on the part of the defendant, and there is evidence tending to prove, that one Levy Archer had, up to 1889, and for many years prior thereto, been president of the bank; that April 8, 1889, Archer died, and the defendant was then elected president of the bank, and held that office until 1895; that Archer drew a salary from the bank from February 1, 1881, of $800 per year; that, during the last two years that Archer was president of the bank, he drew large sums of money therefrom, and when he died he was indebted to the bank for such loans in the sum of $29,000; that a meeting of the directors of the bank was held after his death, at which it appeared that he was then indebted to the bank in the amount last stated; that *Ring* wanted the bank to go into liquidation, but that the other directors opposed such action, and elected *Ring* as president of the bank, and also urged him to become administrator and manager of the Archer estate, and to administer such estate, pay off all claims thereon, and the residue was to go toward the payment of the indebtedness to the

bank; that *Ring* acted as both president of the bank and administrator of the Archer estate; that in settling up the estate, which occupied from 1889 to 1897, it appears that *Ring* performed a large amount of services therein, aggregating 535 days, and realized during that time about $35,000, and therefrom satisfied all outside debts, and also the debt due to the bank of $29,000. For a further history of the litigation, see the report of this case on the former appeal. 106 Wis. 647, 82 N. W. 571.

At the close of the last trial the jury returned a special verdict, consisting of answers to sixteen questions, to the effect (1) that the amount due on the two notes was $3,039.45; (2) that the services of Ring & Youmans in the Christie case were not performed under a contract with the bank that the bank should pay them for such services; (4) that the services of *Ring* before the referee in the Christie case after the dissolution of the firm of Ring & Youmans were not performed under a contract with the bank that it should pay him for such services; (7) that the value of the services of Ring & Youmans in the Christie case, up to and including the last proceeding at Portage, was $645; (8) that $90 was the value of *Ring's* services in the Christie case after the dissolution of the firm of Ring & Youmans; (9) that *Ring* was not employed by the bank to act as attorney in the suit of Frank W. Archer against the bank; (11) that the services of *Ring* as attorney in the case of Hewett against the bank were not performed under a contract with the bank that it should pay him therefor; (12) that the value of *Ring's* services as attorney in the Hewett case was $120; (13) that the services of Ring & Youmans in the collection of the Kirkland note were not performed under a contract with the bank that it should pay them therefor; (14) that the value of their services in the collection of the Kirkland note was $125; (15) that the services of *Ring* in settling the Archer estate were not per-

formed under a contract with the bank that it should pay him therefor; (17) that the services of *Ring* as president of the bank were not performed under a contract with the bank that it should pay him a salary for such services; (19) that the services of *Ring* in procuring loans in 1893 and 1894 were not performed under a contract with the bank that it should pay him a commission therefor; (21) that the services of *Ring* in taking the appeal in the case of Hill & Kinzie against Archer were not performed under a contract with the bank that it should pay him therefor; (22) that the value of *Ring's* services in the matter of that appeal was $120; (23) that it was not agreed at the time of the dissolution of the firm of Ring & Youmans that *Ring* should succeed to all the rights of that firm to charge and collect for the services theretofore rendered to the bank by that firm as attorneys.

Thereupon counsel for the plaintiff consented to remit and did remit, from the $3,039.45 so found due to the plaintiff on the two notes mentioned, $210,—being the $90 for the defendant's services in the Christie case, and $120 for his services in the Hewett case, as found by the jury in answer to the eighth and twelfth questions; and the court thereupon ordered judgment in favor of the plaintiff for $2,829.45, with costs. From the judgment so entered accordingly the defendant appeals.

*S. M. Marsh,* attorney, and *James Wickham,* of counsel, for the appellant, as to defendant's right to compensation for his services, upon an implied contract, cited *Wheeler v. Hall,* 41 Wis. 447; *Donovan v. Halsey F. E. Co.* 58 Mich. 38, 24 N. W. 819; *Morse v. Ryan,* 26 Wis. 356; *Kickland v. Menasha W. W. Co.* 68 Wis. 34; *Burke v. M., L. S. & W. R. Co.* 83 Wis. 410; *Ten Eyck v. P., O. & P. A. R. Co.* 74 Mich. 226, 41 N. W. 905; *Wilter v. Grand Rapids F. M. Co.* 78 Wis. 543; *Northwestern Fuel Co. v. Lee,* 102 Wis. 426; *Heinze v. South Green Bay L. & D. Co.* 109 Wis. 99–105; *Santa Clara M. Asso. v. Meredith,* 49 Md. 389, 33 Am. Rep.

264; *Gillis v. D., N. S. & S. R. Co.* 34 Minn. 303; *Hooker v. Eagle Bank,* 30 N. Y. 83; *Martin v. Fox & Wis. Imp. Co.* 19 Wis. 580; *Corinne Mill, C. & S. Co. v. Toponce,* 152 U. S. 405, 408; *Ruby Chief M. & M. Co. v. Prentice,* 25 Colo. 4, 52 Pac. 210; 21 Am. & Eng. Ency. of Law (2d ed.) 907, 909.

For the respondent there was a brief by *L. M. Sturdevant* and *Chas. F. Grow,* and oral argument by *Mr. Grow.* They cited *Santa Clara M. Asso. v. Meredith,* 49 Md. 389, 33 Am. Rep. 264; *Henry v. Rutland B. R. Co.* 27 Vt. 435; *Citizens' Nat. Bank v. Elliott,* 55 Iowa, 104, 39 Am. Rep. 167; *Loan Asso. v. Stonemetz,* 29 Pa. St. 534; *Kilpatrick v. Penrose F. B. Co.* 49 Pa. St. 121; *Sawyer v. Pawners' Bank,* 6 Allen, 207, 209; *Pew v. Gloucester Nat. Bank,* 130 Mass. 391; Field, Corp. sec. 181; *Eakins v. American W. B. Co.* 75 Mich. 568; *Utica Ins. Co. v. Bloodgood,* 4 Wend. 652.

CASSODAY, C. J. On the former appeal it was held that:

"Where services are rendered to a corporation by one of its officers, which are clearly outside of his official duties, a recovery may be had therefor under implied contract, if the circumstances be such as to fairly imply that it was expected that the services were to be paid for." *Lowe v. Ring,* 106 Wis. 647, 82 N. W. 571.

In that case it was further held that:

"Where a bank is creditor of the estate of a decedent, and vitally interested in a wise administration thereof, it may contract, either expressly or by implication, to pay one of its officers for his services as administrator of the estate."

Among the questions submitted to the jury upon the last trial were seven, each of which called upon the jury to determine whether the services therein mentioned were "performed under a contract with the bank" that it should pay for the same. Such questions left the jury to infer that the defendant could not recover unless the bank expressly agreed to pay, even though he was employed by the bank to perform

such services and the same were outside of his duties as president of the bank. The misleading tendency of the questions does not seem to have been cured by the charge. In determining such questions, it was important for the jury to know what constituted such a contract. Was it necessary that it should have been an express contract, in order to be binding? And if so, was it necessary to be in writing? The court, after explaining the difference between an express and an implied contract, charged the jury that:

"A corporation, however, can only make an express contract through an agent authorized for that purpose, or through its board of directors. The usual way for a board of directors to enter into a contract is by a formal motion or resolution adopted by such board of directors at a meeting of such board, regularly called or appointed, or at which all directors are present. If, however, a proposition is made to such board of directors at such a meeting as I have described, and all of the directors present assent thereto, and the party contracting acts upon such promise of the board of directors, so made, the corporation will be bound, even though a formal vote or resolution is not adopted. *Anything less than this will not constitute an express contract with a corporation.* Loose talk had with directors outside of a meeting, or at a meeting not regularly called or appointed, when the directors were not all present, will not suffice to make an express contract with a corporation."

We are referred to no authority in support of such proposition, and we find none. "It is a well-settled principle of corporation law," says a standard authority, "that a corporation, except in so far as it may be restricted by its charter, has the same power as an individual to enter into any contract that may be necessary or usual in the course of the business for which it was created, or that is reasonably incident thereto. This power is always implied in the absence of a positive restriction in its charter." 7 Am. & Eng. Ency. of Law (2d ed.) 755, citing numerous cases, and, among others, one in this court, where it was held to be competent

for the cashier of a bank, as agent for its board of directors, to execute a promissory note for money borrowed to use in its business, and the bank will be bound thereby. *Ballston Spa Bank v. Marine Bank,* 16 Wis. 120. See, also, *Houghton v. First Nat. Bank,* 26 Wis. 663; *Winterfield v. Cream City B. Co.* 96 Wis. 239, 71 N. W. 101. This court, following the decisions in other states, held, in effect, that an officer of a corporation, having the general management of its business, may, with the knowledge and acquiescence of the directors, or with their subsequent acquiescence, enter into any contract necessary or usual in the course of the business for which the corporation was created, or reasonably incident thereto, without authority first being given therefor by formal vote of the directors, and that such authority may be inferred from the conduct of the directors, or from their knowledge of the facts and a failure to make objection. *Ford v. Hill,* 92 Wis. 188, 195, 66 N. W. 115, and cases there cited; *Northwestern Fuel Co. v. Lee,* 102 Wis. 426, 430, 78 N. W. 584. It seems that the rule as to retaining attorneys is less formal in this country than in England, and less stringent than in earlier times. Weeks, Att'ys at Law, §§ 185, 186, 190. Accordingly, it has been held, in effect, that corporations may retain counsel to prosecute or defend actions in which they are interested, under a parol employment, without any formal vote of the directors, and without making the same a matter of record. Id.; *St. Louis, Ft. S. & W. R. Co. v. Grove,* 39 Kan. 731, 18 Pac. 958; *Manchester Bank v. Fellows,* 28 N. H. 302, 307; *McCabe v. Fountain Co.* 46 Ind. 380. In the first of these cases it was held that:

"Where the general manager of a railroad company retains a practicing attorney to attend to the legal business for the company, the company is liable for the services of the attorney, unless the general manager had no authority to make the employment, and the attorney knew, or might have known by using ordinary diligence, that he had no such authority."

This court has held that the authority of an attorney who appears in court for a corporation is presumed. *Shroudcn-beck v. Phœnix F. Ins. Co.* 15 Wis. 633. See, also, *Lisbon v. Holton,* 51 N. H. 209, and *St. Clair v. Rutledge, post,* p. 583, 92 N. W. 234. We must hold that the portion of the charge quoted was not only misleading, but erroneous.

2. Error is assigned because the court charged the jury, under the fifteenth question submitted, to the effect that "there was no express contract" that the bank would pay the defendant for his services in settling the Archer estate. The evidence on the part of the defendant tended to prove that the bank, by its directors, expressly agreed to pay the defendant for such services. In view of what has already been said; it was certainly error to take that question from the jury. The same is true as to a portion of the charge to the jury under the seventeenth question, to the effect that there was "no testimony of any express contract" that the bank would pay the defendant a salary for his services as president of the bank.

3. The defendant testified to the effect that, at the time of the dissolution of the firm of Ring & Youmans, all of the accounts and business of the firm were transferred to him, except a few matters which had been retained by Youmans, but "that none of the items which he claimed as an offset in this action were excepted in that settlement." The portion of such testimony so quoted was stricken out by the court without specifying any ground therefor. And yet the twenty-third question submitted to the jury required them to find whether, at the time of the dissolution of the firm, it was agreed that the defendant "should succeed to *all the rights* of said firm to charge for and collect for services theretofore rendered to the bank by said firm as attorneys." As indicated, there was no claim or pretense on the part of the defendant that he had succeeded to all of such rights of the firm. The material question was whether he had succeeded

to the rights of the firm as to the particular items which he had alleged as an offset in this action. That question was not submitted to the jury. It was immaterial whether the defendant had succeeded to all the rights of the firm mentioned in the question so submitted. The striking out of such testimony, and the submitting of the question in such form, was error.

4. Error is assigned because the court refused to allow the defendant to testify as to what, if anything, he was directed to do in connection with the Archer estate by the directors of the bank,—what they said on that subject. This was manifest error.

Other errors are assigned, but what has been here said, and on the former appeal, will be a sufficient guide for a new trial.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.