BURKE, Respondent, vs. THE SIDRA BAY COMPANY, Appellant.

SAME, Appellant, vs. SAME, Respondent.

*December 2—December 16, 1902.*

*Corporations: Implied contracts: What may constitute corporate action: Loan by stockholder to corporation, when due: Interest.*

1. Where moneys are advanced for the use of a corporation with the knowledge, and upon the request of all the stockholders and officers acting in consultation as to the policy and conduct of the corporate affairs, such request is tantamount to that of the corporation, and therefrom, in the absence of any countervailing express stipulations, results an implied contract of the corporation to repay those advances, although there was no formal notice for, or record of, a meeting of the corporation.

2. In carrying on the business of a corporation owning no assets but real estate, it was mutually understood by the stockholders and directors thereof, among whom was plaintiff's assignor, that they would not presently demand repayment of advances made for its use, so long as they should all agree on continuing the attempt to carry on its business. No definite term for such forbearance was agreed upon, and subsequently the conduct of the business for which the advances were made was abandoned. *Held*, that the lending stockholder might, after a reasonable time, terminate the indefinite term of credit and render the debt absolutely due.

3. In such case five years is a reasonable time, and the election is sufficiently declared by commencing action therefor.

4. Where the time of payment of a debt is indefinite, and the creditor has not exercised the right to declare the term of credit at an end, except by bringing action on the debt, interest can only be recovered from the date of the commencement of the action.

APPEALS from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

Two gentlemen, by the name of Ewing and Mitchell, having discovered what they believed to be a deposit of infusorial earth in Eau Claire county, from which could be obtained a product valuable in certain manufactures, secured control or

ownership of certain lands, and proceeded to make explorations. After a little, one James Douglas was invited to join them in such enterprise, and to be permitted to do so upon equality with the other two upon payment of $500, to be expended in such explorations and development. He accepted, paid his $500, and thereafter certain further explorations were made and at least one additional piece of land purchased, upon a small cash payment. Thereafter they organized the defendant corporation, each of them taking one third of the $150,000 of the capital stock, and transferring to it the real estate rights which they had obtained. Douglas was elected president and treasurer, Ewing secretary, and all three directors. The company had no money, of course, as its entire capital stock had been issued for the real estate rights. Prior to the incorporation the parties had an understanding that they would advance moneys as they were able for the purposes of experiment and exploratory work. After the corporation was organized, they, all being directors and meeting together, reached a loose and general understanding that they would make advances to the corporation for some experimental reduction of the product to a commercial form, and for such other purposes as the corporation might need; the same to be paid back to each when the corporation had money to pay it. They appear not to have been equally able to advance, and the agreement seems to have been a very loose one, made in expectation of a speedy reduction of product to commercial form and sale thereof in the way of a manufacturing business. They do not seem to have expressed, if they considered, the contingency of failure of such experiments, abandonment of the business, and the sale of the real estate which the company owned. Advances were apparently made by both Ewing and Mitchell, the amounts whereof are not in evidence, but Douglas expended sums amounting to $1,411.94; the earliest large items of such advances being $100 and $475, necessarily advanced to

protect and complete the corporation's title to a certain parcel
of land purchased before incorporation from one Backstrom.
At about this time $200 was paid back to Douglas by his two·
fellow directors.    The other disbursements are of various
character,—recording deeds, expenses of himself and others·
to Eau Claire, and work in getting out a few car loads of the·
earth and shipping the same to Milwaukee, where was at-
tempted to be erected a reduction plant, to the expenses of
which doubtless the others contributed considerable sums.
These experiments and expenditures extended from May,.
1894, when the corporation was organized, up to an indefinite
date prior to March, 1896, when the reducing plant in Mil-·
waukee was burned down.    Shortly thereafter both Ewing
and Mitchell sold their stock in the corporation to one Whig-·
ham for a price not stated, and accompanied the sale by an,
assignment to him of their respective claims against the·
corporation for moneys advanced in pursuance of this under-
standing.    Douglas, about the same time, sold his stock to one·
Rice, but did not assign to him his claims against the corpora-
tion for money advanced.    He resigned his position as di-
rector, president, and treasurer in March, 1896.    Thereafter·
all of the stock became assigned to one Springer, who now
holds the whole, except four shares, placed in the names of
others in order to qualify them as directors and officers.    All
attempts to do any business whatever have been abandoned·
since the spring of 1896.    On January 31, 1901, the plaintiff,
to whom Douglas had assigned his said claim for advances,.
commenced this suit against the corporation to recover the·
same.    The action was tried to the court, which made findings·
to the effect that the money was in fact loaned to the corpora-
tion, and expended for its purposes by Douglas while treas--
urer, with the knowledge and consent and at the request of
all the other then stockholders, officers, and directors, and
that all material allegations contained in the complaint are
proven and true.    It accordingly rendered judgment in favor·

of the plaintiff for the amount of such advances, less the $200 paid him by his fellow stockholders; to wit, $1,211.94, with interest from the commencement of the action. From the whole of this judgment the defendant appeals, and the plaintiff appeals from that portion of it which denies him interest on the several advancements from their dates up to the commencement of the action.

For the plaintiff there were briefs by *John F. Burke,* attorney, and *Harrison S. Green,* of counsel, and oral argument by *Mr. Green.*

*S. A. Connell,* for the defendant.

DODGE, J.    The trial court found that all of the moneys claimed were advanced by Douglas for the use and benefit of the corporation with the knowledge, approval, and consent, and upon request, of all the stockholders, officers, and directors.    Such consent and request of the directors is tantamount to that of the corporation, when, as appears from the evidence, they were all together in consultation as to the policy and conduct of the corporate affairs, and when a decision so reached by them has been acted on to the detriment of the actor.    Formal notice or record of any such meeting is not essential.    *Northwestern Fuel Co. v. Lee,* 102 Wis. 426, 78 N. W. 584; *Heinze v. South Green Bay L. & D. Co.* 109 Wis. 99, 105, 85 N. W. 145; *Goodvin v. Nichols,* 109 Wis. 672, 85 N. W. 501; *St. Clair v. Rutledge,* 115 Wis. 583, 92 N. W. 234; *Lowe v. Ring,* 115 Wis. 575, 92 N. W. 238.    This finding is fully supported by the evidence; indeed, is substantially confirmed by all the witnesses, except as they labor under some mental confusion as to the difference between the corporation and themselves.    From these facts resulted, upon most elementary principles, an implied contract of the corporation to repay these advances, upon which the liability was immediately enforceable in the absence of any countervailing express stipulations.    That stipulations were made to the effect that such

moneys should not be payable until profits sufficient had been
realized is strenuously contended by respondent, and was
most vigorously litigated upon the trial. Upon that conten-
tion there is no specific finding by the trial court, unless he
intended as such the declaration that all the material allega-
tions of the complaint are true. Such a generalized and am-
biguous statement does not merit approval, as more fully
pointed out in *Milwaukee Nat. Bank v. Gallun, ante,* p. 74,.
92 N. W. 567. By reason of this condition of the findings,
we have found it necessary to go at large into the evidence, to
ascertain whether or not it supports the judgment. Analytical
discussion thereof certainly need not be included in this opin-
ion. Suffice it to say that we find that it was mutually under-
stood by the directors, including plaintiff's assignor, Douglas,.
that they would not presently demand repayment of their ad-
vancements, at least so long as they should all agree on con-
tinuing the attempt to do business, rendering such advances
necessary to the otherwise empty corporate treasury. There
was no definite term for such forbearance agreed upon, and,
as it was accorded merely to render possible the conduct of
certain business, it was conditioned upon such necessity,.
which terminated when the policy of attempting such business
was definitely abandoned. Doubtless this forbearance might
be held to extend over a reasonable interval of suspension, and
the extent of such suspension might be protracted by consent
or acquiescence of the creditor, so that some exercise of elec-
tion on his part might be necessary to absolutely terminate
the indefinite term of credit and render the debt absolutely
due. Such we find to have been the substance and effect of
the understanding, as disclosed by the evidence. It also ap-
pears that all attempts to do business ceased as early as
March, 1896. Certainly, the creditor had in January, 1901,
waited a reasonable time, and might then elect that his debt
should be due, which election he sufficiently declared by com-
mencing suit. We therefore conclude that plaintiff's right to

recovery of the principal of his debt and interest from the commencement of the action is fully supported by the record, and that the judgment should not be reversed on defendant's appeal.

Plaintiff, on his appeal, complains of disallowance of interest from the time of making the advances to commencement of the action. The general rule on this subject is well settled. Defendant is liable for interest from the time when it became its legal duty to pay the debt. *Laycock v. Parker,* 103 Wis. 161, 79 N. W. 327; *Smith v. Putnam,* 107 Wis. 155, 168, 82 N. W. 1077, 83 N. W. 288. That time was indefinite. It became fixed only when the creditor exercised his election to declare the term of credit at an end. Of any such declaration there is no evidence until made by commencing suit; hence the judgment allowing interest from that date only is correct.

*By the Court.*—Judgment affirmed on both appeals.