## Petition of ALLEN et al.

## THE REDMOND CASES.

(Circuit Court of Appeals, First Circuit. January 15, 1926.)

Nos. 1877, 1880, 1881, 1885.

**1. Bankruptcy ⟺440—Petition to revise held proper to review decision as to right to stock and title to lands.**

Decision on petition by bankruptcy trustees to secure, by summary proceeding, stock and title to lands, *held* reviewable by petition to revise, and not appeal.

**2. Bankruptcy ⟺288(1)—Where bankruptcy trustees did not have possession of property, their right thereto could not be summarily determined.**

Where bankruptcy trustees did not have possession of property, their right thereto could not be summarily determined.

**3. Bankruptcy ⟺288(1)—Court held without jurisdiction in summary proceeding to order individual bankrupt's wife to turn over her interest in lands purchased with money from bankrupt corporation.**

Where individual bankrupt, who was legal or beneficial owner of all stock in bankrupt corporation, by false entries withdrew corporate funds to purchase property for himself and wife as tenants by entirety over a year before bankruptcy, when corporation was solvent, bankruptcy court, in absence of fraud on creditors, was without jurisdiction, in summary proceeding, to order wife to turn over her interest therein, on theory that withdrawal was fraud on corporation, notwithstanding deeds were not recorded until after petition against corporation was filed.

**4. Bankruptcy ⟺185—Fraudulent conveyances ⟺206(1), 208—In Massachusetts, conveyance defrauding existing or future creditors may be impeached by either class of creditors.**

In Massachusetts, conveyance defrauding existing or future creditors may be impeached by either class of creditors, or by an assignee in bankruptcy, representing both.

Petitions to Revise and Appeals from the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

In the matter of the bankruptcy of George F. Redmond & Co., Inc., bankrupt. Summary proceedings by J. Weston Allen and others, trustees, against Mildred M. Redmond, to require her to release her interest as tenant by the entirety in certain parcels of real estate. To review the decision of the District Court, affirming in part the orders of the referee, the trustees appeal and petition to revise, and the defendant prosecutes cross-appeal and cross-petition to revise. Appeals dismissed, petition of trustees dismissed, decree reversed on defendant's petition to revise, and cause remanded.

9 F.(2d)—14

Bernard J. Killion, of Boston, Mass., for Mildred M. Redmond.

Richard C. Curtis, of Boston, Mass. (Charles P. Curtis, Jr., of Boston, Mass., on the brief), for trustees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. These cross-petitions to revise and (in the alternative) cross-appeals grew out of petitions brought by the trustees in bankruptcy of George F. Redmond & Co., Inc., seeking to secure by summary proceedings certain stock and title to lands alleged to belong to the bankruptcy estate of this corporation.

[1] The questions are properly here on petitions to revise; the appeals, Nos. 1889, 1881, should be dismissed. Wiedhorne v. Levy, 253 U. S. 268, 269, 270, 40 S. Ct. 534, 64 L. Ed. 898; In re Codman-Fletcher Co. (C. C. A.) 287 F. 806, 807, and cases cited.

George F. Redmond & Co., Inc. (hereafter called Redmond Company), did a stock brokerage business in Boston. George F. Redmond was treasurer and head of the company, and owned outright all but two shares of the stock, and beneficially the other two shares. On March 5, 1924, an involuntary petition was filed against the Redmond Company; adjudication followed on April 28, 1924. On March 24, 1924, an involuntary petition was filed against Redmond, on which he was adjudicated on June 15, 1925. Allen, Brickley, and Curtis were trustees of the Redmond Company; they were also receivers of Redmond individually.

In October and December, 1924, the trustees of the Redmond Company filed petitions, seeking by summary proceedings to obtain possession and full title to certain stock, and also to two parcels of land in West Newton called the Gray and Trotter parcels, constituting together an extensive estate occupied by the Redmonds as a residence. After various proceedings not now material, the case has sifted down to contentions concerning this realty. The Gray parcel was purchased by Redmond in 1920, and the Trotter parcel in 1923. At the time of the Trotter purchase, Redmond conveyed the Gray land, through a conduit, to himself and to his wife as tenants by the entirety. Title to the Trotter lot was taken in like tenancy in February or March, 1923, in the names of Redmond and his wife. About that time Redmond also executed quitclaim deeds of his interest in both parcels directly to his wife. But the deeds were not recorded until March 5, 1924,

and March 11, 1924, after the filing of the involuntary petition against the Redmond Company, but before the filing of the bankruptcy petition against Redmond individually.

The result was that, at the time of the filing of the petition against the Redmond Company on March 5, 1924, record title to both parcels stood in the names of Redmond and wife as tenants by the entirety. But at the time when the petition was filed against Redmond individually the quitclaim deeds to his wife of Redmond's interest in these parcels had been duly recorded. .

Counsel for the trustees rely on G. L. Mass. c. 209, § 3, for their contention that these quitclaim deeds were for present purposes void, as follows:

"Gifts of personal property, and conveyances of real estate other than mortgages, between husband and wife, shall be valid to the same extent as if they were sole, except that no such conveyance of real estate shall have any effect, either in passing title or otherwise, until the deed describing the property to be transferred is duly acknowledged and recorded in the registry of deeds for the district where the land lies."

The trustees of the Redmond Company, by summary proceedings, now seek to recover from both Redmond and his wife their respective interests in this estate, incorrectly described by the trustees as "halves." The referee and the District Court assumed jurisdiction over the husband's interest, and Redmond complied with resultant orders. The referee ordered that Mrs. Redmond should release to the trustees her .interest in the Gray parcel acquired by her husband's deeds, recorded in March, 1924, after the filing of the petition against the bankrupt company, and also her entire interest in the Trotter lot, subject to a claim of $1,228.58, which was apparently to be apportioned, in a manner not now material, between the two bankrupt estates. The District Court affirmed the orders of the referee, except as to Mrs. Redmond's interest in the Trotter lot, derived from the original deed of 1923, which conveyed this parcel to Redmond and wife as tenants by the entirety.

The trustees of the Redmond Company now claim error, in that the court below refused to take jurisdiction on summary proceedings over Mrs. Redmond's interest in both parcels acquired by her in 1923. Mrs. Redmond, on the other hand, claims that her rights in both parcels, grounded on the deeds recorded after March 5, 1924, can only be determined by a plenary suit; otherwise stated, that the referee had no jurisdiction, in summary proceedings over her rights. Mrs. Redmond's objection to the jurisdiction was seasonably and repeatedly asserted. There was no waiver of her rights.

While the trustees in their petitions allege possession, the record states:

"No evidence was offered in support of the allegation of the petitioners that they were in possession of the Gray and Trotter properties. On the contrary, it was shown that the respondent Mildred M. Redmond was and has at all times been in possession and has never relinquished possession; all of which is shown by stipulation filed in these proceedings, copy of which is hereto annexed marked C."

[2] The trustees cannot ground summary jurisdiction on possession. In re Flynn (C. C. A.) 300 F. 693, 695, and cases cited; In re Marquette, 254 F. 419, 166 C. C. A. 51.

In the view we take of the case, many of the contentions on both sides have become immaterial.

[3] The fundamental contention in both petitions is, as stated in the brief for the trustees, as follows:

"The theory of the petitions is simply the tracing of company funds; there is no question of a preference or of a conveyance in fraud of the company's creditors involved. The issue in substance is whether the property was purchased with funds of the company or with Redmond's personal money."

They rely "simply upon tracing funds illegally withdrawn from the company into the purchase price of the land." The record shows, as noted above, that Redmond was, in 1920, the beneficial owner of all of the stock of the Redmond Company. There is evidence, on this record uncontrolled, if on such an issue it could be (In re Yorkville Coal Co., 211 F. 619, 128 C. C. A. 570), that at that time the corporation had large profits, acquired in stock speculations. The referee found that in 1920 Redmond, using the names of fictitious persons described as customers, drew out of the Redmond Company more than $270,000, and used this money in buying certain stock (not now involved) and the land in Newton. The referee's finding, adopted in effect by the court below, is that, because of the lack of votes by the directors and the use of fictitious names and false entries in the books, these withdrawals were "without authority or other justification"; that "the whole performance is a bare-faced fraud."

We are unable to adopt that proposition. On this record, whatever we may suspect to be the truth, the corporation was, at the time of these withdrawals, solvent.

Whether the use of fictitious names and entries intrinsically false was merely for the purpose of concealing the destination of the money from employees, or for any other purpose, excusable or inexcusable, is for present purposes immaterial, for the money withdrawn did not, on this record, belong, in whole or in part, to creditors; it belonged, beneficially, to the sole stockholder, and it is obvious that the sole stockholder could not commit a fraud on himself, even if on any theory such fraud could for present purposes be held material. Compare Commonwealth v. Dow, 217 Mass. 473, 105 N. E. 995.

As there is no contention of fraud on creditors, the trustees' case is grounded simply on Redmond's failure to have dividends declared and paid, and on his use of fictitious names to cover his withdrawals. This is not enough. Compare 14 C. J. p. 807, notes 31, 32, 33, 34; Spencer v. Lowe, 198 F. 961, 117 C. C. A. 497. In 2 Cook, Corporations (7th Ed.) § 534, pp. 1560, 1561, it is said:

"A division of profits without the formality of declaring a dividend is equivalent to a dividend. A division of the profits is a dividend even though not called such and not considered such by the directors and stockholders. It is legal for a corporation to distribute its profits by the payment of salaries, provided all the stockholders assent thereto"—citing in the notes numerous cases.

In Spencer v. Lowe, supra, at page 965 (117 C. C. A. 501) the Court of Appeals for the Eighth Circuit cites with approval the following from the decision of the Supreme Court of Michigan in Barnes v. Spencer & Barnes Co., 162 Mich. 509, 127 N. W. 752, 139 Am. St. Rep. 587:

"Though the record does not show that, as formal action was taken as would be shown by the records of a carefully conducted corporation, we think it cannot be said that dividends were not authorized and declared. It must be remembered that no question of the right of creditors is involved. See Cook on Corporations, 534; Hartley v. Pioneer Iron Works, 181 N. Y. 73, 73 N. E. 576; Rorke v. Thomas, 56 N. Y. 559; Reading Trust Co. v. Reading Iron Works, 137 Pa. 282, 21 A. 169, 170; McKusick v. Seymour, etc., 48 Minn. 172, 50 N. W. 1116; Penn. Iron Works v. Mackensie [Mackenzie], 190 Mass. 61, 76 N. E. 228: 'A resolution will

be construed as equivalent to a dividend where any other construction would amount to an illegal preference among the stockholders.' Redhead v. Iowa National Bank, 127 Iowa, 572, 103 N. W. 796: 'A dividend may be legal, even though not formally declared, it being paid by common consent, and hence cannot be recovered back on that ground after being actually paid.' Berryman v. Bankers, etc., Co., 117 App. Div. 730, 102 N. Y. S. 695; 'The stockholders may agree among themselves informally to distribute a certain sum as dividends without going through the form of corporate action. No formal declaration is necessary, either by the stockholders or board of directors, and a distribution of profits by a unanimous consent without corporate action is legal.' Groh's Sons v. Groh, 80 App. Div. 85, 80 N. Y. S. 438. A division of profits is a dividend, even though not called such and not considered such by the directors or stockholders. Cook on Corporations, p. 1445, and cases cited. A scrip dividend is resorted to where company has profits not in cash. Cook, par. p. 1446."

See Burke v. Sidra Bay Co., 116 Wis. 137, 92 N. W. 568, and cases cited.

For their proposition that, even if the corporation was solvent in 1920 and Redmond owned all its shares, the funds withdrawn by Redmond can now be recovered by the trustees in bankruptcy, the trustees cite First National Bank of Memphis v. Towner, 239 F. 433, at page 440, 152 C. C. A. 311 (C. C. A. 6th Circuit); England v. Dearborn, 141 Mass. 590, 6 N. E. 837; Saranac & L. P. R. Co. v. Arnold, 167 N. Y. 368, 60 N. E. 647; Buffalo L. T. & S. D. Co. v. Medina Gas Co., 162 N. Y. 67, 56 N. E. 505.

These cases fall far short of sustaining so far-reaching a proposition. But on the present narrow issue of jurisdiction in summary proceedings it is unnecessary to reach a final conclusion on this point.

It follows that, as the record now stands, the money thus withdrawn and used by Redmond in buying the Newton estate might be found to be his money. At any rate, his title was more than colorable when, in 1923, an interest in both parcels was conveyed to his wife as tenant by the entirety. There is (to repeat) neither allegation, evidence, nor contention that the conveyances in 1923 were in fraud of the creditors of the Redmond Company.

[4] Whether they were valid or in fraud of Redmond's creditors, existing or future, is also a question not arising on this record.

But we observe that in Massachusetts "it is well settled that if a debtor makes a conveyance with the purpose of defrauding either existing or future creditors, it may be impeached by either class of creditors, or by an assignee in insolvency or bankruptcy who represents both"; by Morton, J., in Day v. Cooley, 118 Mass. 524, 527, citing Parkman v. Welch, 19 Pick. (Mass.) 231; Thacher v. Phinney, 7 Allen (Mass.) 146; Winchester v. Charter, 12 Allen (Mass.) 606; Wadsworth v. Williams, 100 Mass. 126. Compare Schreyer v. Scott, 134 U. S. 405, 10 S. Ct. 579, 33 L. Ed. 955; Horbach v. Hill, 112 U. S. 144, 149, 5 S. Ct. 81, 28 L. Ed. 670; 27 C. J. p. 521, §§ 198–203.

What effect, if any, Redmond's release to the trustees of the Redmond Company of his interest in this estate may have, is a question not now raised. Compare 3 Remington Bankruptcy, § 1199, and cases (page 29). But it should not be overlooked that tenancy by the entirety is a peculiar title. Pray v. Stebbins, 141 Mass. 219, 221, 4 N. E. 824, 55 Am. Rep. 462; Palmer v. Treasurer, 222 Mass. 263, 110 N. E. 283, L. R. A. 1916C, 677; Donahue v. Hubbard, 154 Mass. 537, 28 N. E. 909, 14 L. R. A. 123, 26 Am. St. Rep. 271.

Concerning such tenancy, the Supreme Court of Massachusetts said in Pray v. Stebbins:

"At common law, both husband and wife were seized of the estate thus granted per tout et non per my as one person, and not as joint tenants or tenants in common. There could be no severance of such an estate by the act of either, and no partition of the land during their joint lives, and the survivor became sole seized of the entirety of the estate."

And in Palmer v. Treasurer, the court said:

"The difference between a joint tenancy and a tenancy by the entirety is that joint tenants take by moieties and are each seized of an undivided moiety of the whole, per my et per tout, which draws after it the incident of survivorship unless either party in his lifetime severs the jointure. On the other hand neither husband nor wife can sever a tenancy by the entirety. They do not take by moieties but by entireties. Neither can alienate a moiety, so as to defeat the title to the survivor in the whole."

In Michigan it is held that neither husband nor wife can, without the consent of the other, sell, or incumber such estate, and that the interest of the husband does not pass to his trustee in bankruptcy. In re Berry (D. C.) 247 F. 700, and cases cited 706; In re Beihl (D. C.) 197 F. 870. Obviously, Redmond's release to the trustees of the Redmond Company, though involuntary, was an attempt to sever a tenancy by the entirety.

In Hoag v. Hoag, 213 Mass. 50, 99 N. E. 521, Ann. Cas. 1913E, 886, it was expressly held that the interest of husband and wife in real estate held by them as tenants by entirety cannot be severed, and that a petition for the partition of such property will not lie.

We anticipate no question not now before us. On this record, we are dealing only with the rights of the trustees of the Redmond Company to recover by summary process assets of that estate—not of the estate of Redmond individually. Mrs. Redmond has a title as tenant by the entirety based on conveyances made more than a year prior to the bankruptcy of the Redmond Company and of Redmond individually. She has also a record title to the whole estate based on deeds from her husband, on this record apparently good, *unless given in fraud of his creditors*. This is no case for summary procedings; her title is more than colorable.

The petition of the trustees (No. 1877) must be dismissed. On the petition of Mrs. Redmond (No. 1885) there must be a decree reversing the order of the District Court that Mrs. Redmond release to the trustees of the Redmond Company any interest derived by her in this estate through her husband's deeds recorded after the bankruptcy of the company. A single bill of costs may be allowed to Mrs. Redmond in Nos. 1877 and 1885.

In Nos. 1877, 1880, and 1881, the case is dismissed, without costs.

In No. 1885, the decree of the District Court, ordering the release by the petitioner to the respondents of any interest in the real estate derived through her husband's deeds recorded after bankruptcy, is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the petitioner recovers costs in this court.

BINGHAM, Circuit Judge, concurs in the result.