52   575
127a  517
52   575
83    23
52h     575
80 AD⁵ 91

THE SHERIDAN ELECTRIC-LIGHT COMPANY OF NEW YORK, APPELLANT, *v.* THE CHATHAM NATIONAL BANK, RESPONDENT.

*Principal and agent — powers of an executive committee of a board of trustees of a corporation to authorize one of its members to indorse negotiable paper belonging to the corporation — such authority is not invalid, although coupled with an unlawful direction as to the disposition of the proceeds — power of a corporation, all of the stock of which is owned by four or five trustees thereof, to transact business by informal conversations — estoppel.*

A corporation, created under the manufacturing laws of the State of New York to organize electric-light companies in other States, the plaintiff in this action authorized two of its agents to organize such a company at Cleveland, in the State of Ohio, upon condition that the company so organized should purchase treasury stock of the plaintiff to the amount of five per cent of the capital of such company so organized, and should pay to the plaintiff twenty-five per cent

of its full paid non-assessable stock; that, should the capital of the company, organized under such authority, be $100,000, then it should purchase of the plaintiff, at its par value, $5,000 of its treasury stock; "and in the same proportion, be the capital stock more or less, provided, however, that no single company shall be obliged to purchase more than $10,000 worth of the aforementioned stock." The agents so employed having received from the Cleveland company a sum in excess of $10,000, claimed to be entitled to such excess, under an alleged agreement made with the plaintiff, which stated: "The contract made with you on the eighth of February specifies the amount to be paid this company; any excess, whether in stock of this company, or in cash or stock of branch companies, belongs to you, and should the same be received by us it will be immediately transferred to you."

It appeared upon the trial of an action, brought to recover such excess, over $10,000, paid by the Cleveland company, that this claim on behalf of the agents had been presented to three of the trustees of the plaintiff, who constituted an executive committee thereof, and that they empowered one of their number, by a written power of attorney executed by them, to settle and adjust the business with the agents, obtaining for the plaintiff the sum of $10,000; that the trustee, to whom such power of attorney was given, settled the matter with the agents, in accordance with the authority thereof, and indorsed certain checks and drafts, upon the security of which the defendant in this action paid over such excess of the proceeds thereof, above $10,000, to the said agents, to recover which sum so paid by the bank this action was brought by the corporation against it.

*Held,* that the bank was protected in making such payment by the plain language of the power of attorney, although the trustees subscribing the same might have exceeded, in the disposition of the money received from the bank, the power which they could lawfully exercise on behalf of the company.

That, if specific authority to indorse such checks and drafts was legally delegated by the instrument, the fact that the executive committee conferred upon its member further authority, upon which the power to make such indorsement was in no manner dependent, would not invalidate the action of the attorney in making such indorsement.

The trustees of the plaintiff were five in number, one of whom never qualified or acted, and another of whom had been present at only one of the earlier meetings of the board. The three trustees who had executed the power of attorney had been appointed an executive committee of the company, with authority to transact the ordinary and usual business of the plaintiff.

*Held,* that, in view of the object and purpose of the plaintiff's organization, the indorsement of commercial paper was within the scope of the authority of the executive committee.

The stock of the company was substantially owned by the three members of the executive committee, and by a Mr. Sheridan, for the employment of whose inventions it was incorporated.

*Held,* that where the circumstances and condition of the corporation were such, it was not essential that the selection of the executive committee should be by

a formal resolution of the board of trustees, entered in their minutes, as where a corporation consists of a small number of persons like a partnership they may transact all their business by conversation without formal votes, and parties who deal with them will not be required to sustain all their acts by showing that they were directed by a formal vote taken at a meeting of the board of trustees.

That the committee in this action, which had full power to sell and negotiate paper, payable to the order of the company, could delegate such power to one of its members, where its execution involved the exercise of no judgment or discretion on his part and was merely ministerial.

It appeared that, after this transaction with the agents, the matter was brought to the attention of the board of trustees, and discussed at a meeting thereof, at which the executive committee, constituting a majority of the trustees, were present.

*Held*, that, although such disposition of the money in question might have been in violation of the rights of the corporation, and could not have been confirmed or ratified by the action of the persons, through whose conduct it was disposed of, and although such trustees might be accountable and liable to the corporation, for having acted in violation of their duties, yet that it was within the power of the board of trustees to ratify and confirm the indorsement of such paper, even though, by their further action, the trustees might have rendered themselves liable for the misuse or misappropriation of the proceeds thereof.

That the fact that the company, through such indorsement, received the sum of $10,000 and appropriated it to its own use, knowing generally, as the trustees and executive committee did, that it was obtained in this manner, precluded the company from afterwards disaffirming the transaction through which the money had been received

APPEAL by the plaintiff from a judgment rendered at the New York Circuit on a trial before the court, without a jury, and entered in the office of the clerk of the county of New York on the 7th day of December, 1887, by which judgment the plaintiff's complaint was dismissed upon the merits, with costs, and from an order denying a motion for a new trial, entered in the same office.

The action was brought to recover the proceeds of certain negotiable paper discounted by the defendant, which acted in making such discount upon the faith of the following power of attorney :

"Know all men by these presents, That the executive committee of the board of trustees of the Sheridan Electric Light Company of New York, acting with full authority by virtue of a resolution of the board of trustees of said company, have made, constituted and appointed, and by these presents do make, constitute and appoint William A. Shepard, of New York, their true and lawful attorney for them, and, in their name place and stead, to

close and consummate all transactions with Dr. Oscar C. Kendrick and Earl L. Shepard, managers, in the matter of the sale of the right to use and sell and to form companies to use and sell the lights and dynamo machines made under said Sheridan patents in and for the State of Ohio, and to receive all moneys and checks paid by said Kendrick or Shepard, and to sign all papers and checks, or indorse the same, necessary to carry out transactions, giving and granting unto the said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as we might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that he, the said attorney or his substitute, shall lawfully do or cause to be done by virtue hereof."

*Edward D. McCarthy*, for the appellant.

*Sanford H. Steele*, for the respondent.

DANIELS, J.:

The claim made by the plaintiff was for the conversion of checks and drafts amounting to the sum of about $57,358.36. The plaintiff is a corporation created under the manufacturing laws of this State. A prominent object of its creation was the organization under its authority of electric light companies in other States and territories. It authorized two persons to organize such a company at Cleveland, in the State of Ohio. They succeeded in organizing the company there, with a capital of $1,000,000. By the authority conferred upon these two persons it was provided that each company organized under the authority of the plaintiff must purchase treasury stock of it to the amount of five per cent of the capital of the company organized, before licenses would be granted to use and employ the inventions owned by the plaintiff. And that the company so organized should also pay to the plaintiff twenty-five per cent of its full paid non-assessable stock. It was provided, further, that in case the capital of the company organized under this authority should be $100,000, then it should purchase of the plaintiff, at its par value, $5,000 of its treasury stock, "and in the same proportion, be the capital more or less, provided, however, that no single company

shall be obliged to purchase more than ·ten thousand dollars worth of the aforementioned stock."

In organizing the company at Cleveland the two persons to whom the authority was committed obtained the drafts and checks now in dispute. They were made payable to the plaintiff, and these two individuals claimed the entire excess over $10,000, under an agreement with them declaratory of the effect of the contract empowering them to act in the organization of the company in the city of Cleveland. This final agreement declared, " that the contract made with you on the 8th of February specifies the amount to be paid this company. Any excess, whether in stock of this company or in cash, or stock of branch companies, belongs to you, and should the same be received by us, it will be immediately transferred to you." And it was under this stipulation that the agents claimed the entire amount of the checks and drafts which had been obtained in Cleveland on the organization of the company there exceeding the sum of $10,000. This claim was disaffirmed by this action, the plaintiff asserting that the securities obtained in this manner were its own "property under the provision of the agreement already referred to ; that the company organized should purchase five thousand dollars of the treasury stock of the defendant for every one hundred thousand dollars of its capital, subject, however, to the proviso already mentioned, that the company itself should not be obliged to purchase more than ten thousand dollars of the treasury stock." Where the company organized did not avail itself of the privilege secured by this proviso, but actually extended its purchase so far as to include $5,000 for every $100,000 of the capital of the new company, there the plaintiff insisted that the securities obtained in that manner were its own property. And that was considered to be the effect of the agreement entered into when the drafts and notes were obtained in its name, and for it, from the persons interested in the organization of the new company, in *Sheridan* v. *Sheridan Electric Light Company* (38 Hun, 396).

But when these checks and drafts were obtained in this manner, and taken by the two agents to the city of New York to obtain a settlement with the plaintiff, these agents were unwilling to pay to the plaintiff more than the sum of $10,000 mentioned in the proviso. They had, at that place, on the 8th of May, 1882, upwards of

$36,000 in amount of these checks and drafts, payable to the order of the plaintiff. And, prior to any disposition of them, these two agents met William A. Shepard, who was a witness on behalf of the defendant in the action, and one of the trustees of the plaintiff. And in the interview which took place between them the two agents made this claim to the witness, insisting that they were entitled to the benefit of all the securities over and above the $10,000, and that they desired to settle with the plaintiff upon that understanding. His testimony is that he laid the subject before the two other trustees, who, with himself, had been constituted an executive committee of the plaintiff. And that he explained to them the position taken by these persons who had been instrumental in the organization of the company at Cleveland. And that they then empowered him, by a written power of attorney, executed by themselves, to settle and adjust the business with these other persons, obtaining for the company in the adjustment only this sum of $10,000. For that object they joined in a power of attorney to the witness authorizing him to sign all papers and checks, or indorse the same, necessary to carry out the transactions which it was the object of the parties to consummate. This trustee, empowered to act in this manner, met the two persons from Cleveland at the defendant's banking office, and the power of attorney was produced and exhibited to the president and cashier of the bank, and they, considering it to be sufficient for the purpose, received and discounted the checks and drafts upon the indorsements made by this attorney thereupon. Ten thousand dollars of the proceeds was carried to the credit of the plaintiff, and the residue was secured to and obtained by the two Cleveland agents.

The theory upon which the action was prosecuted and tried was that this power of attorney did not authorize the bank to receive and act as it did in accepting and discounting the paper, but that what it did was without authority, rendering the bank liable for the conversion of these checks and drafts. And whether that is its legal position is the point, the disposition of which must determine this appeal. The power of attorney did, in plain language, authorize William A. Shepard, the trustee to whom it was given, to indorse this paper; and if that power was legally delegated, the bank is to be protected in acting upon it, although in other respects, having no connection with the indorsements to be made, the power of attorney may

have exceeded the authority which the persons subscribing it could exercise on the part of the company, and may have also been untruthful in its recitals. If this specific authority was legally delegated by the instrument, then the fact that it contained further authority, upon which the power to indorse was in no manner dependent, would not, so far as the indorsements made under it were concerned, invalidate the action of the agent. It was not an illegal instrument, made in violation of a statutory restraint or prohibition, but its validity and binding effect upon the plaintiff depended entirely upon the power of the two members of the executive committee executing it to delegate to the other the authority contained in it. And if they exceeded their power in providing for a further substitution of authority, that fact would not deprive the agent of the authority to indorse the paper, if these persons were in such a relation to the company as authorized them to confer that power, or if the use of it was afterwards ratified or confirmed by the company itself.

The trustees of the company were five in number. One, however, never qualified or acted, and another is stated to have been present at only an early meeting of the board. It was stated, in the course of the evidence, that he had not been present at any meeting after the first, and had not been notified or required to be present when the meetings were held. But upon this subject the testimony of the secretary, who was not a stockholder, was that "the meetings of the board of trustees were always called by a written notice, or in pursuance of an adjournment;" and as he apparently had no other duties to perform than those strictly appertaining to his office of secretary, it is probable that his statement as to this fact was more reliable than that of the trustee who was examined as a witness upon the trial. Each of these witnesses, however, do agree that, soon after the plaintiff was incorporated, a motion or resolution was carried, by which three of the members of the board of trustees were elected or appointed as an executive committee of the company. This committee is shown to have consisted of Henry Ellis, the president and treasurer of the company, William A. Shepard, the witness, and Samuel P. Smith, another of the trustees. And they continued to act as such and to manage the business of the company throughout the period of these disputed transactions. Their selection

as an executive committee had the sanction of the statute, although it was provided by section 3 of chapter 40 of the Laws of 1848, that the stock, property and concerns of the company should be managed by not less than three nor more than thirteen trustees, for by section 26 of the same act the corporation possessed the general powers and privileges mentioned in title 3, chapter 18 of the first part of the Revised Statutes; and by subdivision 5 of section 1 of that title it was empowered " to appoint such subordinate officers and agents as the business of the corporation shall require." And the appointment of the executive committee was an appropriate exercise of this authority. (*Olcott* v. *Tioga R. R. Co.*, 27 N. Y., 546.) And when it was appointed, even though its authority may have been too broadly stated by the witness Shepard, it still did have the power, as its appointment was described by the secretary himself, to transact the ordinary or usual business of the plaintiff. And the indorsement of commercial paper of this description was within that part of its business, for a leading object of its organization was the acceptance and receiving of funds from subordinate companies incorporated under its authority. And the usual mode of transmitting and receiving such funds would be by the use and indorsement of commercial paper. (*Hoyt* v. *Thompson's Exr.*, 19 N. Y., 207.) The plaintiff was so far a trading corporation, a part of whose business would necessarily be transactions of this description, and they would naturally and legitimately fall within the scope of the duties of an executive committee. Not only, therefore, did this committee possess the authority of indorsing and transferring the paper in controversy, but the treasurer himself, who was also president of the corporation, had that power by virtue of his office as treasurer. (*Narraganset Bank* v. *Atlantic Silk Co.*, 3 Metc., 282.)

The stock of the company was substantially owned by the three members of the committee, and by Mr. Sheridan, for the employment of whose inventions it was incorporated. And where that is the nature of the corporation it is not essential that the selection of the committee should be by formal resolution of the board of trustees entered in their minutes. For it has been held that " where a corporation consists of a small number of persons, like a partnership, they may transact all their business by conversation without formal votes. And it will be a violation of the plainest principles of jus-

tice to hold those who deal with them to prove all their acts by regular votes." (*Melledge* v. *Boston Iron Co.*, 5 Cush., 158.) It does not, accordingly, detract from the authority of the committee that no formal resolution has been found in the minutes of the proceedings of the board defining and declaring the limits of its authority. This committee, having itself the power to indorse and negotiate paper payable to the order of the company, could delegate the same power by its united action to the witness Shepard through the instrumentality of the power of attorney, for that involved no exercise of judgment or discretion on his part. The business to be transacted is stated, and so the fact has been found, to have been communicated by this trustee to the other two members of the committee, and they had agreed upon what should be done. That was to accede to the claims of the Cleveland agents, allowing them to retain for their own benefit the entire proceeds of the checks and drafts over the sum of $10,000 they were willing to pay to the plaintiff. That position received the assent and approbation of the committee. And after that there was no more to be done than to indorse the name of the company upon the paper and receive the sum of $10,000 in its behalf. These acts included no exercise of judgment or discretion on the part of the agent selected to do the business. And for that reason it was competent for the other two members of the committee to empower him to make these indorsements and to receive this sum of $10,000 for the plaintiff. (*Com. Bk. of Lake Erie*, v. *Norton*, 1 Hill, 504; *Emerson* v. *Providence Hat Mfg. Co.*, 12 Mass., 237; *Renwick* v. *Bancroft*, 56 Iowa, 527.)

What was to be done was the performance of no more than ministerial acts. And the power to perform those acts could, in this manner, be confided by the committee to one of their number. The case of *People's Bank* v. *St. Anthony's R. C. Church* (39 Hun, 498), has been referred to as an authority inconsistent with this disposition of the power of the committee. But it has no application to their action for the reason that its members acted together, as a committee, in determining and deciding what should be done, and providing the manner in which their determination should be carried into effect. Here there was unity of action, while in that case the trustees acted individually and separately. In receiving the paper,

with the indorsement made in this manner, the bank acted upon the faith and effect of the power of attorney. And it had the right so to act, inasmuch as the power contained this lawful delegation of authority from the other members of the committee to the person who conducted the business with the bank. He had been legally empowered to indorse and transfer the paper to the bank, and it could not be made liable for a conversion of the paper when that was received by virtue of this authority. And that this authority was vested in the committee is further authenticated by the proof that the business which had previously been done for the company was performed by the committee. The agreement made with the two Cleveland agents was made by its members and the drafts and checks were obtained in the exercise of that authority. And no more than the consummation of the same business resulted from the action of the committee through which these drafts and checks were indorsed and disposed of. After that was done the evidence of this witness is that the business was brought to the attention of a meeting of the board of trustees. This meeting is stated to have taken place on the 25th of May, 1882. And it is then said that what had taken place was fully discussed by the board; that the transaction was talked over, and all the facts in the possession of the witness were laid before the trustees, and no dissent whatever appears to have been expressed. It is probable that no more than these three members were at the time present, but they were a majority of the board of trustees, and, according to the testimony of the secretary, notice of the meeting must have been given, and, as a majority, their action was binding upon the corporation. (2 R. S. [6th ed.], 391, § 6.)

It has been insisted that the disposition made of this paper being in violation of the rights of the corporation could not be confirmed or ratified by the action of the persons through whose conduct it was disposed of. And that will be the case as to the accountability or liability of trustees acting in violation of their duties to the corporation. But the defendant cannot be made liable by reason of such action on the part of the trustees, when it is made to appear, as it was upon the trial, that it received this paper in good faith and under the exercise of lawful authority for its indorsement. The misconduct of the trustees consisted in permitting an appropriation of the

proceeds of the paper to the use of the Clevland agents, and not in the indorsement or transfer made of the paper to the defendant. And it was within their power to ratify and confirm that indorsement, even though by their further action they may have rendered themselves liable for the misuse or misappropriation of the proceeds of the paper itself. With that the defendant had nothing to do. For its protection, all that was necessary was that the power should exist, as it has been held to exist, for the indorsement of the paper and its transfer to the bank. The misuse of the proceeds after that is an act for which the bank was not accountable, but rests wholly between these individuals and the plaintiff. And the conduct of the bank cannot be impeached by the further circumstance that out of the proceeds received by the Clevland agents they loaned and advanced as a cover for a gift to the trustee, acting under the power of attorney, the sum of $2,500.

A further act of ratification arises out of the fact that the company, through the indorsements received this sum of $10,000, and it was afterwards appropriated to its use and benefit; and it could not receive and dispose of this fund, knowing generally, as the trustees and the executive committee did, that it was obtained in this manner, and afterwards disaffirmed the transactions through which the money was secured. This principle was applied in *Castle* v. *Bullard* (23 How. [U. S.], 173), to affirm a disposition of property by receiving the profits of a fraudulent sale in the shape of commissions. And it was further sanctioned in *People's Bank* v. *National Bank* (101 U. S., 181), where it was said that, " all the parties engaged in the transaction, and the privies, were agents of the defendant. If there were any defect of authority on their part, the retention and enjoyment of the proceeds of the transaction by their principal constituted an acquiescence as effectual as would have been the most formal authorization in advance, or the most formal ratification afterwards." (Id., 183.) Both the power of attorney executed and the approval of what was done by the trustees themselves, and the acceptance and retention of this sum of money fully exonerated the defendant from liability for the paper indorsed and transferred, on the 8th of May, 1882.

The residue of the paper was in like manner indorsed, received by the bank and discounted on the 5th of June, 1882. That amounted to upwards of $18,000. As to that, the evidence tended

to show the understanding of the committee to be that the proceeds were claimed by and to go wholly to the Cleveland agents. And when that paper was taken to the city of New York it was in like manner indorsed, transferred to the bank and discounted, as that which was received and disposed of on the eighth of the preceding month. No further or more special action was taken concerning the disposition made of the second installment of paper on the fifth of June; as to that no direct ratification took place, but there was acquiescence on the part of these trustees and this committee in what was done for the transfer and indorsement of this paper to the bank; and that remained unquestioned until the meeting of the board on the 10th of July, 1882, when Mr. Sheridan, who owned the greater part of the stock of the company, insisted upon it, that proceedings should be taken to recover the money in this manner retained by the Cleveland agents. Even then it was not claimed by him, or any other person present, that the bank was liable, but that the persons to whom the money had been paid, and who had retained it, should be made accountable for it to the company. But even without any further ratification than arose out of the acquiescence of the board in what had been done on the fifth of June, the bank was exonerated from liability, for it acted under a lawful authority binding upon the corporation in receiving and discounting the paper. That was sufficient for its protection as to this part of the transaction. Upon neither branch of the case was a liability made out against the bank. It had the right to act, as far as it did act, upon the apparent as well as real authority delegated to the witness Shepard.

It is unimportant to consider the rulings rejecting evidence offered on behalf of the plaintiff, or whether other findings of fact assailed by the appellant were or were not supported by the evidence, for, as the defendant was protected in receiving the paper upon the indorsement of the trustee to whom the power of attorney was made, the case would in no manner be changed if the other evidence had been received, or if the findings complained of were not founded upon a legal measure of proof, and the judgment in the case should be affirmed, with costs.

Van Brunt, P. J., and Brady, J., concurred.

Judgment affirmed, with costs.