The justice is well sustained in his findings by the evidence, excepting as to the amount of the recovery.

The arrangement for the transportation of the goods in question was made by the plaintiff's sister, acting as her agent at Engleside, above mentioned; the plaintiff, at the time, being and residing at Little Falls aforesaid. Upon the delivery of the goods at the station for transportation there was given to the plaintiff's agent a bill of lading upon which was plainly and legibly stamped in red letters as follows:

"Valuation restricted to $5.00 per 100 pounds."

"The consignor of this property has the option of shipping same at a higher rate without limitation as to value in case of loss or damage from causes which would make the carrier liable, but agrees to the specific valuation named in case of loss or damage from causes which would make the carrier liable because of the lower rate thereby accorded for transportation."

Upon the trial plaintiff's said agent testified that she read the foregoing, but did not understand the meaning of it. I think, under the facts shown in the case, this shipping receipt or bill of lading, in the form in which it was delivered to the plaintiff's agent, became the contract between these parties for the transportation of these goods in question. Consequently, the respective rights of the parties in the matter in dispute are governed by the stipulations therein contained. I appreciate the fact that there are apparent distinctions in this line of cases, as pointed out by the authorities; but I think the facts disclosed bring this case within the law stated in Germania Fire Ins. Co. v. Memphis & Charlestown R. R. Co., 72 N. Y. 90, 28 Am. Rep. 113, and the authorities to the same effect mentioned therein. It is well settled that the shipping receipt or bill of lading, under ordinary circumstances and unless facts are shown to the contrary, is the contract between the shipper and the common carrier (Hoffman v. Metropolitan Express Co., 111 App. Div. 407, 97 N. Y. Supp. 838, and cases cited therein), and that the shipper who receives it without objection, in the absence of imposition, misrepresentation, fraud, or concealment, is bound by its terms and cannot set up his failure to read or understand in order to prevent it legal effect. 111 App. Div. 407, 97 N. Y. Supp. 838; Mills v. Weir, 82 App. Div. 396, 81 N. Y. Supp. 801.

I have come to the conclusion that the recovery herein should have been limited to $5 per 100 pounds, as stated in the contract; and, the parties having stipulated in open court that the recovery in that event would be $14.80, the judgment is reduced to said amount, and, as so reduced, affirmed, without costs to either party as against the other.

Judgment reduced, and, as so reduced, affirmed, without costs to either party.

━━━━━━

(118 App. Div. 50)

### BOGART v. NEW YORK & L. I. R. CO.

(Supreme Court, Appellate Division, First Department. March 8, 1907.)

1. CORPORATIONS—OFFICERS—DIFFERENT EMPLOYMENT—SERVICES.

Plaintiff while a director of defendant railroad company was appointed consulting engineer by defendant's board of directors without any salary being fixed. The next year he was elected secretary, and continued to perform his duties with reference to engineering advice, etc., in connec-

tion with a contemplated extension of the railroad. *Held*, that the fact that plaintiff was a director and officer of the company did not preclude him from recovering the reasonable value of his services as engineer.

**2. RAILROADS—AUTHORITY OF PRESIDENT.**

The by-laws of defendant railroad company provided that the president should be the chief executive officer and head of the company, and should supervise all other officers and departments of the road in every respect. *Held*, that where plaintiff had been appointed consulting engineer of the railroad by a resolution of the board of directors, the president had authority "to direct" plaintiff to perform such services with reference to a contemplated extension of the line.

**3. CORPORATIONS—COMPENSATION OF OFFICERS—ADMISSIONS.**

Where plaintiff was appointed consulting engineer of defendant railroad company by a resolution of the board of directors, and the company thereafter paid a bill for his services as engineer, it thereby admitted that it was under obligation to pay plaintiff for like authorized services thereafter rendered.

**4. SAME—RENDITION OF SERVICES—AUTHORITY—EVIDENCE—AFFIDAVITS.**

In an action for services as consulting engineer for defendant railroad company, defendant applied for a bill of particulars in support of which it filed an affidavit of its president, alleging that in 1902 affiant requested plaintiff to formulate a plan or to solve the engineering problems involved in connecting the location of defendant's proposed tunnel under the East river with the Forty-Second street terminus of certain railroads in New York. He also averred that he was aware of the extent of plaintiff's services, knew their character in a general way, but, with that exception, was not aware of any service done by plaintiff for the railroad company during the time mentioned in the complaint. *Held*, that such affidavit was admissible against defendant to show that the services were rendered for it.

Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by John Bogart against the New York & Long Island Railroad Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

George L. Kobbe, for appellant.

George M. Pinney (Aaron C. Thayer, on the brief), for respondent.

LAUGHLIN, J. The action, as limited on the trial, was brought to recover the value of services rendered by the plaintiff as consulting engineer, to the defendant during the period commencing in the month of October, 1901, and ending in the month of November, 1902. On the 25th day of April, 1895, plaintiff was appointed consulting engineer of the defendant by a resolution duly adopted by its board of directors, which, with respect to the compensation to be paid, provided as follows: "At such compensation as the board may hereafter determine upon." This appointment was never revoked, but no salary was thereafter prescribed for the position. Mr. Nevin was president of the company from the 25th day of April, 1895, until the 11th day of April, 1904. The plaintiff had been a director of the company since the 12th day of December, 1889, and held 25 shares of stock of the par value of $100 each; and he was elected secretary of the company in January, 1896. After his appointment as consulting engineer, and

prior to the 16th day of December the same year, the plaintiff, at the request of the president of the defendant, performed services consisting of engineering advice and making plans and estimates for the route of the railroad which the defendant contemplated constructing under the East river, across Manhattan Island and under the Hudson river to the state line; and on that day he presented to the board of directors of the defendant a bill for $2,000 for such services, which was approved and paid. On the 1st day of November, 1895, the board of directors of the defendant, by a formal resolution, in effect declared its intention to construct a railroad from Cassenova Station, on the New York, · New Haven & Hartford Railroad to the East river, near the junction of One Hundred and Forty-First street and the Southern Boulevard, and thence under the East river to Lawrence Point in Long Island City on the line of Forty-Second street, New York, continued, and thence under the East river to Forty-Second street, and under Forty-Second street to and under the Hudson river to the state line, with various branches therein described.

There was no meeting of the board of directors after the month of January, 1896, until the 14th day of October, 1902. The plaintff testi-- fied that during the period commencing in October, 1901, and ending in November, 1902, pursuant to the request of the president of the defendant, he formulated a plan to solve the engineering problem in connecting the proposed tunnel and railroad of the defendant with the Forty-Second street terminus of the New York Central & Hudson River Railroad Company and the New York & New Haven Railroad, and prepared and furnished plans, studies, tracings, profiles, drawings, and explanatory documents for connecting the routes of the respective railroads at Forty-Second street, and a profile plan of the tunnel under the East river; and that by direction of the president of the defendant, he delivered them to Mr. Janney, a stockbroker—through whom it appears that the president of the defendant endeavored to interest the New York Central Railroad Company in the plan; that this work consumed about 13 months of his time, and that he also employed draughtsmen in connection with it throughout the same period, that these plans embodied a scheme for depressing the tracks of the New York Central leading into the Grand Central Station and for a depressed or basement station "substantially such as had now been adopted and is now in progress of construction at that point," including a plan for making the change without substantially interrupting the traffic, and including plans for connecting the lines for passenger traffic and operating the cars by steam or electricity, which involved a study of the bed of the East river and the preparation of profiles thereof; that by direction of the president of the defendant, he had various consultations with Mr. Janney, and with representatives of the New York Central & Hudson River Railroad Company, with a view to having the plan approved and prepared detailed estimates of the cost of the entire work; that he had large experience as a consulting engineer; that the general duties of such an engineer are the preparation of plans, estimates and designs, and advising the executive officers of the company, and that his services were worth the sum of $18,000. The plans were subsequently delivered by Janney to the president of the company, and, so far as appears, it

still has them. The plaintiff introduced in evidence a letter written by the president of the defendant to said Janney under date of May 2, 1902, as follows:

"My dear Sir: In the matter of the plans for connections between the New York & Long Island Railroad and the railroads using the Grand Central Station, I would say that the Hon. John Bogart, as our consulting engineer and acting chief engineer, has full power and authority to sign ·the plans on behalf of the New York and Long Island R. R. Co., and to agree with the engineers of the companies using the Grand Central Station upon all matters of engineering detail necessary or convenient in arranging a suitable operating connection. Whenever these plans have been agreed upon by the experts on both sides, I have no doubt the terms of a contract will be readily and promptly agreed upon. As president of the New York & Long Island Railroad Company, I am ready to take up the arrangement of a contractor." Plaintiff also introduced in evidence an affidavit of the president of the defendant, used on a motion for a bill of particulars, showing: That the company was formed in 1887; that in 1892 a construction company was formed and work was begun near the easterly terminus of the line as originally established in Long Island City; but a disastrous explosion occurred, resulting in many casualties and the construction operations were suspended, and have not been resumed. That efforts have been made from time to time to finish the enterprise, but without success. That in the year 1902, I requested him [meaning plaintiff] to formulate a plan or to solve the engineering problem involved in connecting the location of the defendant's proposed tunnel with the Forty-Second street terminus of the New York Central & Hudson River Railroad Company and the New York, New Haven & Hartford Railroad Company. I am not aware of the extent of the plaintiff's services in that connection. I know their character, generally speaking, for I saw their result embodied in a blue print ground plan and profile. That with·that exception I am not aware of any services or any work done by the plaintiff for the defendant during the times mentioned in his complaint."

At the close of the plaintiff's case, the defendant moved for a nonsuit, and upon the denial of the motion rested without offering any evidence either  on the question of the employment of the plaintiff or the value of his services. Inasmuch as his testimony as to the value of his services might have been controverted, the jury were justified in accepting it, and the only question we are called upon to review is whether the defendant is liable. It is evident, from the failure of the board of directors to meet, that the management of the business was left to the president, whose powers and duties, so far as material to the appeal, were defined by section 1 of article 8 of the by-laws, as follows:

"The president shall be the chief executive officer and head of the company in all its operations, and shall supervise all other officers and all departments of the road in every respect."

It is manifest that the services rendered by the plaintiff were essential to the development of the company. I am of opinion that it was fairly within the authority of the president to direct the plaintiff to perform those services. It is to be borne in mind that it was not essential that the president be clothed with authority to employ the plaintiff, for that had been previously done by the board of directors. It was merely essential that the services fell within the line of services to be performed by the consulting engineer, and that they were in good faith directed to be performed by the president. It cannot be successfully maintained that by virtue of his relation as director and secretary of the company, the plaintiff was not entitled to charge for his services.

Bagley v. Carthage, etc., Railway Co., 165 N. Y. 181, 58 N. E. 895. He was under no duty as secretary or director of the company to perform these services. The company by paying a bill for similar services, admitted that it was under obligation to pay the plaintiff for any like services thereafter rendered by authority. Moreover, I am of opinion that the affidavit of the president of the company, used by the defendant on a motion for a bill of particulars, and filed in this action, is evidence against the company, that these services were rendered for the company, for it contains an admission that they were rendered "for the defendant," and, having been used by the defendant in the action, it was competent evidence against it. C. & N. W. Ry. Co. v. Ohle, 117 U. S. 123, 6 Sup. Ct. 632, 29 L. Ed. 837; National Steamship Co. v. Tagman, 143 U. S. 28, 12 Sup. Ct. 361, 27 L. Ed. 87; Trustees of Wabash & Erie Canal v. Bledsoe et al., 5 Ind. 133.

It follows that the judgment and order should be affirmed, with costs. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. I dissent. When the plaintiff was appointed consulting engineer the resolution of the board of directors provided that it should be "at such compensation as the board may hereafter determine upon," and he accepted that appointment upon such terms, I think he implicitly agreed that the compensation for the services to be rendered under such appointment was to be determined by the board of directors, and that he was not entitled to recover from the defendant compensation for his services based upon a quantum meruit. Assuming that the president had the power to direct him to perform services for the company, such direction was not an employment of the plaintiff, but simply regulated the work that he was to perform as an officer or employé of the company under the appointment which he had accepted. He accepted the appointment without the salary being fixed, agreeing that it should be subsequently fixed by the directors, and not the president. As an employé of the company, he performed services for the company, but the services that he performed were under his appointment by the board of directors, and his agreement with the company was that he should be paid such compensation as the board should fix. As he has never requested the board to act, and as the board have never fixed the compensation, I do not think he was entitled to recover. The action of the board in directing that he be paid for the services that he performed prior to the services in question was an act of the board under the power that it had reserved to itself to fix the plaintiff's compensation. It certainly was not an admission that he was entitled to recover the value of the services that he rendered in the future, without action by the board of directors. An entirely different question would be presented if the president of the company had employed the plaintiff to render service to the company, which services he had rendered, and the company had accepted them; but where he was employed by the company, at a salary to be fixed by the board, it seems to me that he can only recover the amount of the salary or compensation thus fixed, and is not entitled to recover upon a quantum meruit.