Appeal of **REUB ISAACS & CO., INC.**    **Docket No. 59.**

The taxpayer is entitled, under section 234 (a) (1) of the Revenue Act of 1918, to deduct as an ordinary and necessary expense reasonable extra compensation to officers and employees agreed upon by the directors before the end of the taxable year.

Submitted October 12, 1924; decided November 6, 1924.

*Mark Eisner*, *Esq.*, for the taxpayer.

*John D. Foley*, *Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and MARQUETTE.

This appeal was heard upon oral testimony presented on behalf of the taxpayer from which the Board makes the following

FINDINGS OF FACT.

(1) During the years 1918, 1919, and 1920 the taxpayer was, and still is, a close corporation organized under the laws of the State of New York with its principal office at Rochester, N. Y.

(2) During the years mentioned the directors of the taxpayer were three in number, its stockholders being four in number. All of the directors were stockholders and employed by the taxpayer in some capacity, in addition to their offices of directors or executive officers. The directors of the corporation were its principal employees. Two of the directors were traveling salesmen for the corporation, spending practically all of their time on the road.

(3) The taxpayer maintained books of account which were kept upon the accrual basis, the taxable period being the 12-month period ending October 31 in each of the three years.

(4) During the month of September in each year it was customary for the traveling salesmen of the corporation, they being also directors, to go to Rochester to secure samples preparatory to their trip on the road, remaining on the road until their return for the annual meeting of the stockholders and directors in November. While at Rochester during September in each of the years 1918, 1919, and 1920 they held informal meetings, agreeing upon the amount of extra compensation to be paid to the officers and employees for services rendered during the fiscal year about to end. The chairman of the board of directors and the president of the corporation kept a memorandum of the names of the persons who were to receive this extra compensation and the amounts thereof.

(5) In the month of September of the year 1918, the board of directors, at a meeting, voted to pay to the executive officers of the

company the aggregate sum of $10,000 for extra compensation for the fiscal year ending October 31, 1918, voting at the same time certain bonuses to other employees of the company.

(6) In the month of September in the year 1919, the board of directors at a meeting voted to pay to the executive officers of the company the aggregate sum of $11,500 for extra compensation for the fiscal year ending October 31, 1919, voting also certain bonuses to other employees of the company.

(7) In the month of September in the year 1920, the board of directors at a meeting voted to pay to the executive officers of the company the aggregate sum of $16,000 for extra compensation for the fiscal year ending October 31, 1920, voting again certain bonuses to other employees of the company.

(8) The entry of the special compensation to the officers herein referred to in the journal for the close of the year 1918 was made in the month of December, 1918, as of October 31, 1918; the entries of the special compensation to the officers herein referred to in the journal for the close of the years 1919 and 1920 were made prior to the closing of the books for these years ending October 31, 1919, and 1920.

(9) The annual meeting of the stockholders was required by the by-laws to be held on the first Monday in November of each year; the annual meeting of the directors being usually held in the month of November, at such time as all the directors could be assembled therefor.

(10) On the 6th day of November, 1918, following the close of the fiscal year ending October 31, 1918, the directors, at their annual meeting, adopted resolutions voting, among other things, the said sum of $10,000 to its executive officers and certain bonuses to other employees; the minutes of said meeting being duly recorded.

The officers and employees to whom such extra compensation and bonuses were voted, and the amounts so voted at such meeting, were the same as previously voted at the meeting held in September of said year.

(11) On the 10th day of November, 1919, following the close of the fiscal year ending October 31, 1919, the directors of the taxpayer at their annual meeting adopted resolutions, voting, among other things, the sum of $11,500 to its executive officers and certain bonuses to other employees; the minutes of said meeting being duly recorded.

The officers and employees to whom such extra compensation and bonuses were voted, and the amounts so voted at such meeting, were the same as previously voted at the meeting held in September of said year.

(12) On the 26th day of November, 1920, following the close of the fiscal year, which ended October 31, 1920, the directors at their annual meeting adopted resolutions, voting, among other things, the sum of $16,000 to its executive officers and certain bonuses to other employees; the minutes of said meeting being duly recorded.

The officers and employees to whom such extra compensation and bonuses were voted, and the amounts so voted at such meeting, were the same as previously voted at the meeting held in September of said year.

(13) Upon audit of the returns of the taxpayer for each of the said years, the deduction of this extra compensation, for each of the years 1918, 1919, and 1920, was disallowed by the Commissioner of Internal Revenue.

(14) Under date of August 5, 1924, the Commissioner determined that there was a deficiency in respect of the tax returned by the taxpayer in the amount of $11,048.71 for the fiscal year ending October 31, 1918; $5,618.48 for the fiscal year ending October 31, 1919; and $7,186.49 for the fiscal year ending October 31, 1920.

### DECISION.

The deficiency determined by the Commissioner is disallowed.

### OPINION.

LITTLETON: This is an appeal by the taxpayer, Reub Isaacs & Co., Inc., from a determination of the Commissioner asserting additional income and profits taxes for the fiscal years ending October 31, 1918, 1919, and 1920.

The taxpayer is a closely held New York corporation. In its returns for each of the years involved, the taxpayer deducted, among other items, as an ordinary and necessary expense of doing business, the sum of $10,000 for the year 1918, $11,500 for the year 1919, and $16,000 for the year 1920; the same being extra compensation paid to its officers and employees for services rendered during each of the three years. The Commissioner upon audit of the returns disallowed these deductions, upon the ground that the compensation was voted by the directors of the corporation after the close of the taxable year and subsequent to the close of the books for such taxable year. It is not claimed, however, by the Commissioner that the extra compensation was unreasonable, nor is it claimed that the extra compensation was not in fact paid for services rendered by the officers and employees during the fiscal years involved.

We are not called upon in this case to discuss the question of reasonable quantum of compensation, or whether the officers of this corporation were distributing profits in the guise of compensation. The question presented in this case for decision is whether the compensation for each of the taxable years was properly determined and constituted accrual items for such years. The facts surrounding the voting of the extra compensation are fully set out in the findings of fact. The testimony introduced shows that all of the directors of the corporation, except one—the president—traveled on the road selling merchandise for the company. It was their custom to meet each year in September for the purpose, among other things, of fixing the extra compensation to be paid to the officers and employees of the company for services rendered by them for the year about to close. At the conclusion of this meeting the officers departed on their several trips, not returning until some time in November. The chairman of the board of directors and the president of the corporation kept a memorandum of the names of the persons who were to receive extra compensation and the amounts thereof.

With respect to the year ending October 31, 1918, the evidence discloses that, through inadvertence, the books of the corporation as of October 31 were closed without a record of the extra compensation allowed to said officers. When the bookkeeper's attention was called to this fact by the president of the corporation, as well as to the omission of an inventory adjustment (not in question here), which further reduced the income of the corporation by $11,586.24, the same was rectified by the bookkeeper by a post-closing journal entry. We find nothing in this which should operate to defeat the taxpayer's right to deduct the extra compensation in the year 1918.

For the years 1919 and 1920 the item of extra compensation appeared in the regular closing journal entries as of October 31 and October 30, respectively, the same being made prior to the actual closing of the books. There is no evidence before the Board which would tend in any way to refute the facts testified to by the witnesses for the taxpayer. Since it is established that the directors of the corporation in September, before the close of the taxable year on October 31, determined the extra compensation to be paid; the same with the exception of the year 1918, which was due to an error, was accrued as an expense upon the books of account prior to the closing of the books, the only point remaining is the effect to be given to the September meetings of the directors.

Closely held corporations, as is well known, act very much like partnerships, their decisions being made in conversations, and oftentimes recorded not in the minutes, but by action. To this condition the attention of the courts has been called, and the position that a corporation can act through its directors informally without written minutes or formal resolutions, and the acts of its directors effected pursuant to oral understanding are as binding as though sanctified by the most rigid adherence to legal formality, has been sustained. In the case of *Gouverneur Publishing Co.*, 168 Fed. 113, there was involved a claim of an officer for salary due him pursuant to an oral understanding with his coofficers and directors. The claim was contested by a creditor and stockholder on the ground that there was no formal resolution fixing the salary. The court in the course of its opinion said:

It is clear that there was a fair understanding with the creditors in the very beginning that Sackett should have $1,200 per year for his services outside of his official duties as director and secretary and treasurer. A binding contract for compensation for such services to one who is at the time an officer or a director in the corporation may be made without any formal resolution. Whatever may have been said in prior cases, this is now the settled law of the State of New York and the United States courts. *Bagley* v. *Carthage W. & S. H. R. Co.*, 165 N. Y. 179, 182, 58 N. E. 895; *Corrine Mill Canal & Stock Co.* v. *Toponce* 152 U. S. 405, 407, 409, 14 Sup. Ct. 632, 38 L. Ed. 493; *Bogart* v. *N. Y. & L. I. R. Co.*, 118 App. Div. 50, 54, 102 N. Y. Supp. 1093; *Jackson* v. *N. Y. C. R. R. Co.*, 2 Thomp. & C. 653, affirmed on opinion below, 58 N. Y. 623. See also *Henry* v. *R. & B. R. Co.*, 27 Vt. 435, and *Bartlett* v. *M. R. Co.*, 151 Mass. 433, 24 N. E. 780.

In the case of *Sheridan Electric Light Co.* v. *Chatham National Bank*, 52 Hun, 575, the court said:

Where a corporation consists of a small number of persons like a partnership, they may transact all their business by conversation without formal votes.

See also *Hall* v. *Herter Bros.*, 83 Hun, 90.

In the case of *Stetler* v. *McFarlane*, 230 N. Y. 400, the court said:

Official action is not defeated either by the silence of the minutes or by the absence of their formalities if action was in truth intended.

In the case of *Gerard* v. *Empire Square Realty Co.*, 195 App. Div. 244, the court said:

We must recognize the fact that to a greater and greater degree all business, great and small, is being brought under the management of corporations instead of partnerships; that they are, in perhaps the majority of instances, conducted by officers and directors little informed in the law of corporations, who often act informally, sometimes without meetings or even by-laws. To hold that in all instances technical conformity to the requirements of the law of corporations is a condition to a valid action by the directors, would be to lay down a rule of law which could be used as a trap for the unwary who deal with corporations, and to permit corporations sometimes to escape liability to which an individual in the same circumstances would be subjected.

We must in this case give full effect to the informal meetings of the directors held in September of each of the years involved. The formal resolutions specifying the amounts of extra compensation adopted by the directors at their annual meetings held in November of each year, immediately after the close of the taxable year involved, were merely confirmatory of the prior action of the board of directors.

The deficiencies determined by the Commissioner for the years 1918, 1919, and 1920 by reason of the disallowance of these deductions are disallowed and should not be assessed.