Milton A. and Elsa G. Bissell v. Commissioner.
Bissell v. Commissioner
Docket No. 68403.
United States Tax Court
T.C. Memo 1959-215; 1959 Tax Ct. Memo LEXIS 32; 18 T.C.M. (CCH) 1034; T.C.M. (RIA) 59215; November 16, 1959
*32 Tom Roof, Esq., for the petitioners. Donald P. Chehock, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax of petitioners in the amount of $1,284.88 for the year 1953. The issue is whether the respondent erred in determining that Milton A. Bissell received salary in the amount of $8,000 from the Acme Construction Company during the year 1953. Findings of Fact Petitioners, husband and wife, filed their income tax return for the calendar year 1953 with the district director of internal revenue, Phoenix, Arizona. Milton A. Bissell (hereinafter referred to as "Bissell") has been a practicing attorney for many years. In April 1952, Bissell and Paul E. Guerin (hereinafter referred to as "Guerin") decided to form the Acme Construction Company (hereinafter referred to as "Acme") to engage in the construction of residences and other real estate activities. Acme, which was incorporated in April, 1952, operated on a fiscal year ended April 30, and kept its books on an accrual basis of accounting. During the fiscal years ended April 30, 1953, and April 30, 1954, Acme constructed homes, in the $25,000 *33 price bracket, at the rate of about one per month. In the fiscal year ended April 30, 1953, its gross business amounted to $191,843.31, and in the fiscal year ended April 30, 1954, to $284,671.31. Most of its gross revenue was derived from the sale of houses. Bissell and Guerin each contributed $20,000 to the capital of Acme and each received 200 shares of its stock having a par value of $100 a share. [1] Bissell's contribution consisted of $10,000 cash and his interest in a lot known as Lot No. 7 of Alta Hacienda on which was placed a value of $10,000. Guerin's contribution consisted of $5,500 cash, two trucks valued at $2,550, other construction equipment valued at $1,890, office equipment valued at $509.09, small hand tools valued at $150, various other supplies valued at $100, and a lot known as No. 3 in Delores Tract valued at $14,000 which had an outstanding mortgage against it of $4,699.09. At all times material herein Guerin was president and general manager of Acme. His wife, Mary L. Guerin, in addition to performing the duties of secretary-treasurer, kept the books of the corporation. *34 She received assistance and advice in keeping the books, when necessary, from Norman E. Penquite, an experienced accountant employed by Acme in an advisory capacity. Penquite made the opening and closing entries on its books and prepared its income tax return for the year ended April 30, 1953. Bissell, the vice president and legal advisor of the corporation, used his credit connections with a Phoenix bank to make the necessary financial arrangements for Acme in its real estate activities. Bissell had good bank credit and was able to arrange for loans needed by the corporation. He also prepared the minutes of meetings of its board of directors. The first meeting of the board of directors of Acme was held on May 1, 1952. The following is an excerpt from the minutes of that meeting: "At a director's meeting held on above date at the office of Acme Construction Corporation at which all of the directors were present, to wit: Paul B. Guerin, Mary L. Guerin, M. A. Bissell and Elsa G. Bissell, a general discussion took place as to payment of salaries, if any, to the officers and directors of the corporation. It was the unanimous consensus of opinion that the officers would draw no salaries *35 except out of profits. It was determined and decided that salaries should be voted to the directors and that they commence May 1, 1952 but only to be actually paid as authorized by a majority of the board of directors and out of actual profits. It was therefore, upon motion of Paul B. Guerin, duly seconded by M. A. Bissell, decided and resolution unanimously adopted as follows: "Resolved that the following officers shall be paid for their services to the corporation the amounts hereinafter set after their names and said salaries shall be paid only out of the corporation profits. Said salaries are to be paid only when specifically authorized by a majority of the board of directors. It is understood and intended that no salaries are to be paid except as a draw against profits. In addition to the foregoing salaries it is further resolved that should the corporation profits in any one year, before salaries, exceed $40,000.00 that each of the officers may receive as a bonus a proportionate amount up to but not in excess of the amount of his basic salary as follows: "Paul B. Guerin - $1,000.00 per month (President); M. A. Bissell - $500.00 per month (Vice-President); Mary L. Guerin - *36 $500.00 per month (Secretary & Treasurer)". At the time Acme commenced business its directors orally agreed that each of its officers would receive a fixed salary which was set up on its books, that any drawings of cash made by an officer and any amounts for merchandise purchased through Acme in his behalf would be charged to an account receivable for such officer, and that when it was determined that there were profits to offset such drawings for cash or merchandise, the account receivable would be transferred to the officer's salary account. As the business progressed and it was known that there were adequate profits to pay salaries, drawings by officers were charged directly to their salary accounts. The drawings for cash or merchandise made by officers during the year ended April 30, 1953, appearing on the books of Acme as accounts receivable, were at the end of that year charged to the salary accounts of the officers by Penquite. Drawings for cash or merchandise by Bissell charged to his salary account under date of April 30, 1953, amounted to $2,098.65, and those charged to the salary accounts of the Guerins amounted to $6,151.58. The books of Acme as of April 30, 1953, contained *37 entries reflecting unpaid salary due Bissell for the fiscal year ended April 30, 1953, in the amount of $3,901.35 and unpaid salary due the Guerins for the same year in the amount of $8,665.47. Salaries of $6,000 for Bissell and $18,000 for the Guerins were accrued on the books of Acme and taken as expense deductions in its income tax return for the year ended April 30, 1953. For that year, after deducting salaries of $24,000, it reported a net loss of $8,113.46. Drawings for cash or merchandise by Bissell in the amount of $5,155.49 and by Guerin in the amount of $9,751.11 made during the period May 1, 1953 to August 31, 1953, were charged to their salary accounts on the books of Acme. Bissell and Guerin mutually agreed in 1953 that Bissell would terminate his interest in Acme as a stockholder and cease to be an officer of the corporation. For the purpose of providing Bissell and Guerin a basis for settling Bissell's interest (both stock and salary), Penquite, at the corporation's request, prepared from its records several schedules. These schedules included a balance sheet as of August 31 1953; a profit and loss statement for the period May 1, 1953 to August 31, 1953; a computation *38 of Acme's net profit after taxes for the period May 1, 1952 to August 31, 1953; a schedule of officers' salaries, drawings, and distribution of profits for the same period; and a schedule of equities in contracts receivable and other assets as of August 31, 1953. These schedules were prepared after August 31, 1953, and at the time of their preparation Penquite and the officers of Acme knew that, as a part of the settlement, Acme was to transfer to Bissell the interest it had received from him in Lot No. 7 of Alta Hacienda in exchange for the 100 shares of its stock Bissell had acquired from the corporation for this lot. This part of the settlement was reflected by Penquite in the balance sheet he prepared as of August 31, 1953, by eliminating Lot No. 7 as an asset of Acme and by reducing the amount of its outstanding capital stock from $40,000 to $30,000. The remainder of the settlement was reflected by him on the schedule of "Officers' Salaries, Drawings, and Distribution of Profits". The balance sheet of Acme as of August 31, 1953, prepared by Penquite from the corporation's books, shows the following: Total Assets
$82,310.50
Liabilities: Salaries due officers
$ 5,660.22
Other liabilities
40,008.96
Total liabilities
$45,669.18
Capital: Common Stock Issued
$40,000.00
LESS - Treasury Stock
10,000.00
Total stock outstanding
$30,000.00
Earned Surplus
6,641.32
Total Capital
$36,641.32
Total Liabilities and Capital
$82,310.50
*39 The profit and loss statement prepared by Penquite for the four-month period May 1, 1953 to August 31, 1953, discloses that Acme realized a net profit for this period of $17,900.26. One of the expenses deducted in arriving at this net profit was $8,000 for officers' salaries. Penquite computed the net profit of Acme, after taxes, for the period May 1, 1953 to August 31, 1953, as follows: Current net profit for four months
ended August 31, 1953
$17,900.26
LESS - Operating loss for prior
year
8,113.46
Total taxable income (Federal)
$ 9,786.80
30% Federal Tax
2,938.04
Total taxable income (Arizona)
$ 6,848.76
LESS - Arizona State Income tax
207.44
Net profit to surplus after taxes
$ 6,641.32
The schedule of "officers' salaries, drawings, and distribution of profits" prepared by Penquite shows the following: Bissell
Guerin
Salaries for Fiscal Year ended 4/30/53
$ 6,000.00
$18,000.00
LESS: Drawings as follows: 10/52 Arizona Wholesale
$ 27.95
11/52 Preachs Hardware
27.75
$ 92.08
12/52 Cash
2,500.00
1/53 Cash
500.00
Arizona Wholesale
372.00
2/53 Cash
1,000.00
500.00
Arizona Wholesale
187.50
3/53 Cash
1,000.00
4/53 Cash
1,000.00
1,000.00
Ariz. Pipe & Supply
42.95
Guerin House Cost over Mtge
3,182.95
Total Deductions
2,098.65
9,334.53
Balance Unpaid April 30, 1953
$ 3,901.35
$ 8,665.47
PLUS: Salaries for May, June, July, Aug.
2,000.00
6,000.00
Total Amount Payable
$ 5,901.35
$14,665.47
LESS: Drawings as follows: 5/53 Cash
200.00
Preachs Hardware
141.67
98.05
6/53 Cash
1,800.00
7/53 Preachs Hardware
13.82
8/53 Cash
2,000.00
3,500.00
Cash
3,000.00
1,500.00
Additional Costs on Guerin House
2,653.06
Total Deductions
$ 5,155.49
$ 9,751.11
Total Unpaid Salaries
$ 745.86
$ 4,914.36
PLUS - Profit after taxes (Sch. #2)
3,320.66
3,320.66
Total Due and Payable
$ 4,066.52
$ 9,895.35
PLUS - Cost of Outstanding Stock
10,000.00
$14,066.52
*40 Bissell, Guerin and Penquite attended a meeting held on September 8, 1953, in Bissell's office. Each of them was given a copy of the schedules prepared by Penquite, and they were discussed at this meeting. In the schedules as originally prepared by Penquite he had divided the net profits 25 per cent (or $1,660.33) to Bissell and 75 per cent (or $4,980.99) to Guerin. Bissell, after looking at the schedules, objected to this division and insisted on a 50-50 split, or $3,320.66 each. Guerin agreed to this equal division of the net profits, and Penquite made changes allotting $3,320.66 to Bissell and the same amount to Guerin. Bissell and Guerin then agreed to the settlement. In accordance therewith Bissell transferred to Acme 100 of the 200 shares owned by him and received in exchange therefor the interest in Lot No. 7 of Alta Hacienda he had originally conveyed to Acme for these 100 shares. He also received $10,000 for the other 100 shares of Acme's stock owned by him, $3,320.66 as his share of its net profits, and salary of $8,000 (most of which had been charged to his salary account on the books of Acme prior to September 8, 1953, for drawings of cash and merchandise), or a total *41 of $21,320.66. After deducting from this amount Bissell's drawings for cash and merchandise charged to salary during 1953 totalling $7,254.15, and charging him for additional merchandise purchased in his behalf by Acme of $51.59, the balance due him as of September 8, 1953, was $14,014.93. Acme paid this amount by transferring to him in September, 1953, the following: Cash
$ 3,000.00
Ballantyne note
6,541.52
Plaster note
2,473.41
Morgan note
2,000.00
Total
$14,014.93 The three notes were accepted by Bissell at their face value. No W-2 forms were filed by the corporation, nor did it withhold as taxes any portion of the amounts paid to Bissell. After the settlement on September 8, 1953, Bissell drew up minutes reflecting, in essence, a sale by him of 200 shares of Acme for $21,014.93. These minutes did not correctly reflect the settlement agreed to by him and Guerin on September 8, 1953. In the income tax return filed by the Guerins for the year 1953, they reported, as salary compensation received from Acme during that year, the amount of $18,000. In petitioners' return for the year 1953 they reported a long-term capital gain of $11,014.93 from the sale *42 of 200 shares of stock of Acme on September 8, 1953. The stock was reported as acquired in 1952 at a cost of $10,000 and sold in 1953 for $21,014.93. Respondent determined that petitioners received $21,320.66 from Acme in 1953; that $8,000 of this amount constituted salary compensation taxable as ordinary income; that $13,320.66 was received for stock which had a cost basis of $10,000; and that petitioners realized a long-term capital gain of $3,320.66. Bissell received salary compensation from Acme during the year 1953 in the amount of $8,000. Opinion RAUM, Judge: Petitioners contend that the entire amount which Bissell received from Acme during the year 1953, in addition to the $10,000 cash investment he made in the stock of that corporation, represented a long-term capital gain, and that the respondent erred in determining that $8,000 of this amount represented compensation for services rendered. They argue that Acme's board of directors on May 1, 1952, adopted a resolution permitting salaries to be paid to officers upon condition that such salaries be paid out of profits and only when specifically authorized by a majority of the board; that at no time during 1952 were there *43 profits earned by the corporation; that the board did not authorize salaries to be paid to its officers; and that the charging of drawings to salaries was a device to gain a favored tax status upon behalf of the corporation. We do not agree with petitioners. Bissell and the Guerins were officers of Acme and they performed services for it at all times material herein. The minutes of the first meeting of the board of directors provided that salaries in specified amounts be paid out of profits for those services when authorized by a majority of the board. We are convinced that at the time Acme commenced business its directors orally agreed that any drawings made by an officer would be charged to an account receivable for such officer and that when it was determined that there were profits to offset such drawings, the account receivable would be transferred to the officer's salary account. Acme was a close corporation and this action of its directors was just as effective as if it had been taken and recorded at a duly convened meeting. Reub Isaacs & Co., Inc., 1 B.T.A. 45, 48-49; Oliver H. Van Horn Co., 9 B.T.A. 76, 80; Savinar Company, Inc., 9 B.T.A. 465, 467. *44 During the year 1953 when it was known that Acme had profits, drawings made by the officers were charged to their salary accounts. The effect of this action, for tax purposes, was the same as it would have been if the corporation had paid salaries to its officers in amounts equivalent to their drawings and the officers had used these amounts to reimburse it for such drawings. As of August 31, 1953, the amount of drawings charged to Bissell's salary account in 1953 was $7,254.14. The amount accrued on the books of Acme as salary payable to Bissell for the period May 1, 1953 to August 31, 1953, was $8,000, leaving a balance of unpaid salary as of the latter date of $745.86. The latter amount, plus amounts for his shares of Acme's stock and his share of its profits after taxes, was paid to him at the time of the settlement in 1953. We are not impressed by Bissell's testimony that he did not think he ever received any salary from Acme, and that, if he did, he did not know it. The evidence discloses that at the settlement meeting held on September 8, 1953, he received copies of the schedules Penquite had prepared as a basis for the settlement; that he examined these schedules and discussed *45 them with Guerin and Penquite; that he objected to the original division of profits of Acme after taxes made by Penquite; and that when this was changed to give him a 50 per cent share of such profits, he agreed to the settlement shown in the "Schedule of Officers' Salaries, Drawings, and Distribution of Profits". Most of that schedule, which is set forth in our findings, is devoted to officers' salaries and to the amounts due Bissell and Guerin for such salaries after deducting drawings. Moreover, the $8,000 in controversy, which was allocated to Bissell, was matched by a total of $24,000 allocated to the Guerins. Such division was made only on the theory that these amounts represented salaries, since the arrangement between the parties provided that one-fourth of the officers' salaries would go to Bissell and the remaining three-fourths to the Guerins. Had these amounts been anything other than salaries, they would have been divided equally between the Bissells and the Guerins, since they were equal owners of the stock. After a careful consideration of all of the evidence, we have concluded, and found as a fact, that Bissell received salary compensation from Acme during the year *46 1953 in the amount of $8,000. The respondent did not err, therefore, in his determination that $8,000 of the total amount of $21,320.66 received by Bissell from Acme during the year 1953 was taxable to petitioners as ordinary income. Decision will be entered for the respondent. Footnotes
1. The shares were issued in the names of Bissell and his wife and Guerin and his wife.↩